UNITED STATES of America ex rel. Sandy BARNWELL

v.

Alfred T. RUNDLE, Superintendent, State Correctional Institution at Graterford.

Civ. A. No. 70-2457.

United States District Court, E. D. Pennsylvania.

Feb. 3, 1972.

Stewart Dalzell, Philadelphia, Pa. (court appointed), for relator.

Victor DiNubile, Jr., Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Habeas corpus. Relator first came to trial on October 14, 1966 in the Court of Quarter Sessions, Philadelphia County, on charges of aggravated robbery, burglary and assault and battery with intent to rape (Bills of Indictment Nos. 1731–1733, January Session, 1966). The jury convicted relator on two indictments (robbery and burglary) and was unable to agree on the third. On May 19, 1967, the trial judge granted relator a new trial on all charges. Relator was then tried before a jury and, on February 19, 1968, was found guilty on all three indictments. He was sentenced to three to twelve years on each indictment to run concurrently. The Superior Court of Pennsylvania affirmed the conviction in a *per curiam* decision, Commonwealth v. Barnwell, 216 Pa.Super. 800, 263 A.2d 927 (1970). The Supreme Court of Pennsylvania denied relator's Petition for Allowance of Appeal on June 22, 1970.

Relator filed this habeas corpus petition on September 8, 1970. He contends that his due process rights under the Fourteenth Amendment were violated by (1) the admission of testimony concerning an out-of-court identification and (2) the admission of a rifle into evidence.[1]

The state court records and the stipulation of counsel set forth the following facts: On January 16, 1966, at 3:10 a.m., the Philadelphia police received a complaint from Mr. Leroy Mills and Mrs. Carrie Mae Holmes. The complainants stated that six men had entered Mills' apartment, tied his hands behind his back and forced him to lie face down on the bathroom floor. At the same time, in a different room, five men had sexual relations with Mrs. Holmes. The complainants arrived at the Central Detective Division Headquarters at 3:30 a.m. and Detective James Fowler began to take their statements in a small interrogation room.

Relator was arrested carrying a rifle at 3:35 a.m. He was taken to the police station and was seen by Detective Fowler, out of Mr. Mills' and Mrs. Holmes' sight, at 3:45 a.m. Fowler searched relator and found a scarf in his pocket. Fowler then returned to the interrogation room with the scarf, and Mrs. Holmes, in Mr. Mills' presence, positively identified the scarf as hers. Detective Fowler told the complainants "I have the man with the scarf."[2] Fowler

---

1. We find no merit in relator's claim that the admission of the rifle he was carrying when arrested constituted a violation of due process. We find that the rifle was relevant evidence since Mills testified that the man he identified as relator had hit him on the back of the head with a gun when he was on the bathroom floor.

2. At the suppression hearing, Detective Fowler testified that he told the complainants "I have the man with the scarf." At the trial three days later, Fowler testified that he told the victims "That they had brought a man in I wanted them to look at."

then took Mr. Mills and Mrs. Holmes into the main room where relator was standing flanked by two uniformed policemen. Mills identified relator's clothes as "the same kind of clothes" as worn by one of the six assailants. Fowler then asked relator to speak, and Mills identified relator's voice as that of one of his assailants. Mills never identified relator by face, and Mrs. Holmes was never able to make any identification. There was no in-court identification.

The Supreme Court has held that due process is violated when a confrontation is "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 382–383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The claim that Mills' identification of relator falls within this rule "must be evaluated in light of the totality of surrounding circumstances" in order to determine if the procedure "was so unduly prejudicial as fatally to taint [the] conviction." Simmons v. United States, *supra*, 390 U.S. at 383, 88 S.Ct. at 970.

The opportunity for suggestion inherent in Mills' identification of relator is clear. Before seeing relator, Mills was shown a scarf and heard Mrs. Holmes identify it as the scarf she had worn to his apartment the day of the robbery. Immediately after Mrs. Holmes made her identification, the police told Mills that they wanted him to look at "the man with the scarf." Mills was then brought into the main room where he saw relator standing between two uniformed policemen. There is evidence that there were three or four complainants in addition to a number of police officers in the room at the same time; however, we do not conclude that their presence altered the single suspect nature of the confrontation. Fowler testified that there were no other prisoners in the room when relator was shown to Mills, and it is therefore fair to assume that Mills would not have seen anyone but relator who appeared to be in custody. Moreover, Mills' testimony indicates that he was aware only of "a lot of detectives and officers in the room" and that relator was the only man he saw or was asked to identify. The cumulative effect of being shown the scarf and then a man flanked by two uniformed policemen is clearly suggestive.

"Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain." Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, 1284 (1969).

The circumstances of this identification were particularly conducive to irreparable mistaken identification because Mills had observed only parts of his assailants' total personalities. During the robbery, Mills could only sneak glances at his assailants while lying face down on the floor, and he could only identify relator by his clothing and voice. In Palmer v. Peyton, 359 F.2d 199 (C.A. 4, *en banc*, 1966) cited with approval in Stovall v. Denno, *supra*, 388 U.S. at 302, 87 S.Ct. 1967, the Fourth Circuit held that there was a violation of due process when a rape victim, who could only recall that her assailant was a Negro who wore an orange shirt, was shown a similar shirt and then listened for several minutes while, out of her sight, the suspect spoke. The woman identified the voice as that of her attacker. The Fourth Circuit cautioned that

"* * * [w]here the witness bases the identification on only part of the suspect's total personality, such as height alone, or eyes alone, or voice alone, prior suggestions will have most fertile soil in which to grow to conviction. This is especially so when the identifier is presented with no alternative choices; there is then a strong predisposition to overcome doubts and to fasten guilt upon the lone suspect." Palmer v. Peyton, *supra*, 359 F.2d at 201.

Furthermore, in evaluating whether a confrontation was unnecessarily suggestive, we must consider why the police failed to conduct a lineup which could have preserved the possibility of an objective and impartial judgment by the witness as to whether relator's clothing and voice were in fact those of one of his assailants. In Stovall, the Supreme Court approved the showing of a single suspect to a victim who had been seriously wounded because she was the only person who could have exonerated Stovall and no one knew how long she might live. However, there were no compelling reasons which necessitated an immediate confrontation in this case. Prompt on-the-scene confrontations have been permitted on the ground that they "may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh." Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106 (1968). In the case before us, the confrontation did not take place at the scene of the crime but at the police station. Relator was arrested on a separate charge and therefore he was not going to be exonerated and released if Mills could not identify him. Moreover, the results of the confrontation would not have halted the police investigation because the police were still required to look for the other men involved in the robbery.

We conclude that the highly suggestive atmosphere in which this confrontation took place created a substantial likelihood of irreparable misidentification and therefore constituted a violation of due process. Admission of testimony concerning the stationhouse identification was therefore improper, and since this was the only evidence of identification, its admission cannot be held to be harmless error. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We therefore grant relator's petition for habeas corpus.

We wish to express our appreciation to Stewart Dalzell, Esquire, who ably and without recompense prosecuted the relator's case.