## (November 16, 1979)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY E. THOMAS, Appellant. (Appeal No. 1.)—Judgment unanimously reversed, on the law and facts, motion to suppress granted, and matter remitted to Supreme Court, Erie County, for further proceedings on the indictment. Memorandum: After denial of his motions under his first indictment for suppression of seized contraband and of identification testimony, following hearings before different County Judges, defendant pleaded guilty to lesser

crimes charged in two indictments, and was sentenced. He then instituted these appeals and asks reversal of the judgments and vacation of his pleas on the ground that County Court erred in denying his suppression motions. Although the motions related only to the first indictment, his guilty pleas appear to have been a part of "a package" and so we should treat the plea and judgment on the second indictment as part and parcel of the first one. In the morning of August 3, 1977 Gregory Mitchell, answering the doorbell in his home at 465 East Utica Street, Buffalo, was assaulted by two black men who tied him up on the floor, threw a sheet over him and proceeded to remove two TV sets, a stereo and speakers, which they took with them in two taxicabs. Alerted by Mitchell's cries as the intruders left, a neighbor got the license plate number of one of the cabs, and it was given to the police and put over the police radio. Within one hour Detective Murchison interviewed one of the cab drivers, General Wilson, who informed him that he knew one of the two assailants, as "Moon" Thomas and that Wilson and the other cab drove the assailants to Thomas' home at 77 Colfax Street. Murchison also interviewed Mitchell and got his general description of the assailants, and learned that one of the assailants used a knife in subduing Mitchell. Detective Murchison called other police cars to aid him and they went to the house at 77 Colfax Street within one and one-half hours after the crime. There he found the front door open. He knocked and a woman responded. He identified himself and asked for "Moon". She replied that she was Moon's mother, that he was "around here somewhere." Murchison entered with another officer, walked through the sitting room and dining room into the kitchen and through the kitchen outside door where defendant, "Moon" Thomas, was found standing on the steps. Murchison and his partner grabbed him, found a knife on him and arrested him. They then took him down two or three steps to the ground level outside the kitchen, from which point Murchison could see down cellar steps and through an open door to the basement, but he could not see into the basement. Murchison had only a general description of defendant's accomplice, and not his name. He made no mention of him to defendant's mother. The police had no warrant. After arresting defendant, Murchison left him in the charge of his partner and re-entered the house via some steps into the basement. On entering the basement, he found TV sets and stereo equipment, which Mitchell later identified as taken from his home. Murchison had brought cab driver Wilson in the police car to 77 Colfax Street. After arresting defendant, he took him to the car and asked Wilson whether defendant was the man named "Moon" whom Wilson had driven to 465 East Utica Street and thence with the contraband to 77 Colfax Street, and Wilson identified defendant as one of the two men. Murchison then placed defendant, handcuffed, in the rear of a police car and drove him to Mitchell's home, arriving there about two hours after the crime. He told Mitchell that he had a suspect in the car and asked him to look at the suspect but to say nothing, leave, and later speak to Murchison. Mitchell did this and reported to Murchison that defendant was the one who tied him up under the threat of a knife and, with another, removed the TV sets and stereo equipment. Defendant does not dispute that, in light of the information which cab driver Wilson gave to Detective Murchison, and defendant's mother's statement to Murchison that defendant was in the house, Officer Murchison had probable cause to arrest him (People v Payton, 45 NY2d 300). Defendant contends, however, that the police, having no search warrant, lacked probable cause to re-enter his home (basement) and search for contraband. The District Attorney acknowledges that the officer lacked

probable cause to re-enter the house to search for and arrest the accomplice, since Wilson did not know him and Officer Murchison had not inquired of defendant's mother whether another person, a possible accomplice, was in the house. The court found, however, that because Detective Murchison had information that there had been an accomplice, he had the right to re-enter the house to look for him to protect himself from attack. The District Attorney urges the same argument upon us. The argument has no merit (see *People v Fields,* 45 NY2d 986). The police had arrested defendant at the rear of his home. The several officers present had no reason to fear for their safety in merely removing him to their police vehicle. The subterfuge of re-entering the basement to protect themselves from a possible accomplice, in the course of which they found the contraband, cannot be condoned. Lacking a search warrant and probable cause, they had no right to re-enter the house *(Katz v United States,* 389 US 347, 357; *People v Williams,* 37 NY2d 206; *People v Cadby,* 62 AD2d 52; *People v Mahoney,* 60 AD2d 107). Defendant also contends that his identification by the victim, Gregory Mitchell, should have been suppressed. Mitchell testified that his assailants tied him up and put a sheet over his head, but he was able to look from under the sheet and see the assailants removing the property. He states that for a few seconds he saw their faces. However, he could not say whether defendant had a beard. Thus, opportunity to view his assailants during the crime was limited. Hence, it was very important that his pretrial identification of his assailants not be the product of unnecessary suggestion, such as a one-on-one viewing at the instance of the police *(Stowell v Denno,* 388 US 293, 302; *People v Logan,* 25 NY2d 184, 193, cert den 396 US 1020; *People v Ballott,* 20 NY2d 600, 606). The importance of early verification of identity is recognized *(People v Smith,* 38 NY2d 882; *People v Morales,* 37 NY2d 262; *People v Blake,* 35 NY2d 331; *People v Logan, supra),* but such identification involves "viewings on the scene and immediately after the commission of the crime" *(People v Blake, supra,* p 336). The People have not met their burden of establishing that Mitchell's identification of defendants was not tainted by the suggestive method of his one-on-one viewing of the defendant in the police vehicle *(People v Burwell,* 26 NY2d 331, 336; cf. *People v Ramos,* 42 NY2d 834; *People v Cobenais,* 39 NY2d 968). We conclude, therefore, that the hearing courts erred in denying the motions to suppress. (Appeal from judgment of Erie Supreme Court—robbery, third degree.) Present—Dillon, P. J., Cardamone, Simons, Callahan and Witmer, JJ.