■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY P. DOLPHIN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Richmond County, rendered November 14, 1978, convicting him of sodomy in the first degree and burglary in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress a showup identification by the complainant. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and the case is remitted to Criminal Term for a new trial which shall be preceded by a *Wade* hearing to determine whether there exists an independent basis apart from the showup for the complainant's in-court identification of defendant. The defendant stands convicted of sodomy in the first degree and burglary in the second degree. The primary issue at trial, and now on appeal, is the identification of the defendant as the perpetrator. Upon review, we conclude that the judgment of conviction should be reversed because of (1) the illegality of the complainant's showup identification of the defendant, (2) the improper bolstering of the complainant's identification by other prosecution witnesses who observed the showup, and (3) the improper admission of certain photographic evidence. At approximately 11:40 P.M. on December 21, 1977, the complainant, who was alone in her sister's apartment, was grabbed from behind, taken into an unlit bedroom and compelled to commit oral sodomy

upon the assailant. Although she was instructed to keep her head turned away from the perpetrator's face, she was twice able to briefly observe his appearance. Each period of observation lasted only 10 to 15 seconds and was made under conditions of indirect lighting from other rooms in the apartment. The assault was interrupted by the complainant's boyfriend who had come to visit her. The boyfriend testified that when he entered the apartment, the complainant was lying on the bed crying hysterically. The police were subsequently called and arrived at about 12:50 A.M. At this time, the complainant was still very upset and agitated. The complainant's sister was telephoned and told of the incident. One of the officers described the assailant to the sister who responded that it sounded like her next door neighbor, whom she then described. After further conversation, the officer and the sister agreed that the neighbor was probably the perpetrator. Thereupon, a police officer went across the hall to the defendant's apartment and ascertained that he was asleep. The officer returned to the complainant's sister's apartment and waited for a detective. Sometime after 1:00 A.M., the complainant's sister and a police detective arrived. The sister testified at trial that when she arrived home, the complainant was still hysterical. At approximately 1:30 A.M., the detective went to the defendant's apartment, woke the defendant and brought him into the hallway. The complainant remained seated on the living room couch, facing the defendant's door which was about 18 feet away. The purpose of taking the defendant into the hallway, under the pretense of questioning him, was to allow the complainant to make a surreptitious identification. Upon seeing the defendant, the complainant had an extreme physical and emotional reaction, and then verbally identified him as the assailant. After a *Wade* hearing, the defendant's motion to suppress the identification based upon the illegality of the showup was denied. At trial, the complainant testified to the showup identification and identified the defendant based upon her present recollection. In addition, other prosecution witnesses, including the complainant's sister, boyfriend, and several police officers in attendance, testified to the circumstances of the showup, paying particular heed to the complainant's extreme reaction upon seeing the defendant, as well as her verbal identification. Showup identifications are generally disfavored *(People v Smith,* 46 AD2d 639, affd 38 NY2d 882), and have been widely condemned as an inherently suggestive identification procedure (cf. *Stovall v Denno,* 388 US 293, 302; *United States v O'Connor,* 282 F. Supp 963; 1 Paperno & Goldstein, Criminal Procedure in New York, § 79). When the relevant factors are weighed, it is plain that the instant showup was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law" (see *Stovall v Denno, supra,* p 302). Not only was the defendant the only individual who could possibly have been identified as the guilty party, there is no doubt from the record that the complainant knew that the defendant was perceived by the police and her sister as the principal suspect. Knowing that the police went to the neighbor's apartment for the purpose of bringing the defendant into the hallway for a surreptitious viewing, the complainant surely expected to see her attacker even before the defendant came into view. This expectation was necessarily re-enforced by her sister who provided the incriminating description of the defendant and suggested that he might be the perpetrator. The unduly suggestive nature of the above events was greatly exacerbated by the complainant's emotional state. There is uncontroverted testimony that the complainant was hysterical for at least an hour and a half after the attack. There is no question that even at the time of the showup, not quite

two hours after the crime, the complainant was still emotionally distraught. Clearly, the complainant was susceptible to misidentification when confronted with an individual, clad only in dungarees, whom she suspected to be her assailant. The likelihood of a misidentification is increased when it is considered that the complainant had only two brief opportunities to view her attacker and that both observations were made in indirect light. Nor can the prejudicial aspect of this viewing be outweighed by any exigencies. Rather than a suspect who may have been observed fleeing the scene, the defendant was at home, asleep. Defendant's identity was known and there was little likelihood that he would disappear. Having already waited two hours since the crime was committed, there was no justification of expediency, or other exigent circumstances which required a showup, rather than utilizing the preferred procedure of a lineup (cf. *People v Thomas,* 72 AD2d 910). In view of the unnecessarily suggestive atmosphere, the complainant's obvious emotional distress, the limited opportunity for observation of the assailant during the attack, and the absence of any exigent circumstances, the showup was necessarily conducive to the possibility of a misidentification and therefore should have been suppressed. Since neither a complete record nor findings were made concerning the possibility that the complainant may have had an independent basis for identifying defendant at trial, it is necessary to remand for consideration of this issue. Even had we upheld the legality of the showup identification, reversal would have been required by the flagrant bolstering of the pretrial identification by other prosecution witnesses (see *People v Trowbridge,* 305 NY 471; *People v Altman,* 63 AD2d 684). Such bolstering was so dramatically orchestrated as to necessarily have had a prejudicial effect. We further note that the admission into evidence of a magazine picture, found slipped under the front door of the complainant's sister's apartment and which depicted an act of oral sodomy, was improperly admitted. Although clearly relating to the crime, there was an insufficient foundation laid to link the picture to the defendant. Although the latter certainly had opportunity, the record demonstrates that it was relatively easy to enter into the building and gain access to the victim's sister's apartment. In view of the highly inflammatory nature of the evidence and the tenuousness of the nexus between the exhibit and the defendant, a stronger foundation is required to avoid undue prejudice. Hopkins, J. P., Titone, Mangano and Rabin, JJ., concur.