■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH FREGLETTE, Appellant. — Judgment of the Supreme Court, Kings County, rendered June 6, 1980, affirmed. No opinion. This case is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (subd 5). Damiani, J. P., Gibbons, Margett and O'Connor, JJ., concur.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN J. JACKSON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered March 18, 1980, convicting him of four counts of robbery in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and case remitted to the Supreme Court, Kings County, for further proceedings consistent herewith. On December 30, 1978, at 2:40 A.M., two men entered a bar and grill in Brooklyn and robbed the owner and several customers. The first man who entered held a gun and ordered everyone to "hit the floor". All complied with this warning except William Simpson and Raymond Butler, who were then pushed to the floor by the gunman. The robbers departed the premises with the proceeds of the robbery. The gunman was described to the police as a black man, wearing an Army fatigue jacket and a tan wool hat. One week later, the defendant was seen outside the same bar. He was identified as the gunman by Butler, and arrested. Following the defendant's arrest, Butler, Richard Richardone (the owner of the bar) and Thomas Hayes, a patron of the bar who was present during the robbery, were brought to the police station to see if they could identify him as one of the robbers. All three men were taken together into a room and were instructed to view the defendant through a one-way mirror. Butler identified the defendant first. Hayes could not make an identification. Richardone was uncertain at the time of the showup but at the trial he testified he was "99 percent" sure that the man he viewed and the robber were one and the same person. When the viewing was completed, Butler telephoned Simpson and asked him to come to the station house, adding a remark to the effect that they thought they had the robber. Simpson agreed to come and upon his arrival, he looked at the defendant through the one-way mirror. However, he did not make an identification until the defendant, at Simpson's request, donned his tan wool hat. Prior to the trial, defendant moved to suppress the identification testimony. The court denied the application. We think it was error to deny the defendant's application. Showup identifications of the kind described in this case are inherently dangerous. (See *People v Ballott,* 20 NY2d 600, 606; *People v Mercado,* 63 AD2d 720.) Since a lineup could easily have been arranged, there was no need for four witnesses to view the defendant in a showup one week after the robbery. Moreover, it is inherently suggestive for three witnesses to view the defendant simultaneously. *(People v Leite,* 52 AD2d 895.)* Nor can we say that the testimony of Simpson and Richardone was harmless beyond a reasonable doubt *(People v Crimmins,* 36 NY2d 230) in light of the testimony adduced at trial on the identification issue. *(People v Ballott, supra.)* Since there is to be a new trial, a hearing must be held on the question of whether there is an independent basis for an in-court identification, which was not addressed at the initial hearing. Finally, we note that the Trial Justice should not have charged the jury that defendant's wife was an interested witness, as this was a question of fact for the jury. *(People v Gerdvine,* 210 NY 184, 186.)