OPINION OF THE COURT
John Copertino, J.
After a hearing at which the defendant testified and called one witness, this court has the admissibility of certain identification testimony by Sharon P., the victim of the crime for which defendant stands charged, for its consideration.
The court’s findings of facts and conclusions of law follow.
On February 4, 1983, at approximately 12:30 p.m., Sharon P. was returning to her home at 664 Deer Park Avenue, North Babylon, New York, when she noticed that the side door to her house was ajar. She drove into her driveway, and, as she alighted from her automobile, saw through her kitchen window a female inside her house. *159 Immediately thereafter, she observed two people flee the house through the side door approximately 30 feet away. One of these people was the female she had noticed through the kitchen window and the other was a slender male, 5 feet 7 inches tall with dark hair who was wearing a pair of “jeans” and a light colored jacket. They were carrying a beige colored bag — a knitting bag belonging to Sharon P.’s mother — between them. Sharon P. pursued the two in her automobile and, although losing sight of them for a few minutes, again came upon them at a distance of approximately 30 feet. When the male ran toward a parked automobile — a blue Dodge, later learned to belong to the defendant — Sharon P. proceeded to block it with her own automobile. When the male, defendant herein, had his hand on the door of the blue Dodge, Sharon P. observed his face for approximately five seconds from a distance of six feet, defendant thereupon turning around and fleeing across the street.
Shortly thereafter, Patrolman James L. of the Suffolk County Police Department received a radio report of a burglary at 664 Deer Park Avenue involving two suspects, a white female, 20 to 25 years old with blonde hair, dressed in pink, and a white male, 5 feet 6 inches to 5 feet 8 inches tall with dark hair and a mustache and wearing a light colored jacked and dark pants, possibly “jeans”. Before arriving at the scene, L. and his partner received a message to the effect that the male suspect had fled in a certain direction. After speaking with several people in the area, the patrolmen were informed by one individual that someone matching the description of the male had gone into a nearby wooded area, Southard’s Pond, a few minutes earlier. The officers proceeded to an area where they thought this person might exit the woods, and, upon arriving at this location, which was approximately one half to three quarters of a mile from the crime scene, saw an individual matching the description given by Sharon P. talking to a Babylon town enforcement officer. The officers approached this individual, and, upon inquiry, he said that he was Michael Pasciuta and exhibited identification as well. When asked what he was doing in the area, defendant responded that he had been looking for employment and *160 had just come from the railroad station. When it occurred to Officer L. that defendant was in fact headed toward the railroad station, the officer’s suspicions were further aroused. In response to defendant’s inquiry as to what was going on, Officer L. stated that they had just found his automobile on Deer Park Avenue and that they were curious what defendant knew about this. In fact, several minutes earlier, Officer L. had received a radio report that this automobile, parked across from the scene of the burglary, was registered to defendant. In response to their question, defendant told the officers that he had given his automobile to his girlfriend for the day. The officers then asked defendant if he would accompany them to where his vehicle had been found to either retrieve it or to ascertain what the situation was. Defendant’s response was “sure”. Upon arriving at the parking lot where the car was parked, defendant exited the police vehicle, at no time being in handcuffs. Sharon P., who shortly before had been told that the police had apprehended a suspect, was brought across the street to the parking lot and, from a distance of 3 to 4 feet, identified defendant as 1 of the 2 individuals she saw running from her house. This identification took place approximately 20 to 25 minutes after the burglary. Defendant was thereupon placed under arrest.
This court concludes as a matter of law that the pretrial identification of defendant by Sharon P. was not suggestive and not violative of defendant’s right to due process of law. Defendant has failed to meet his burden of showing impropriety on the part of the police after the People had “properly met their * * * burden of going forward with evidence by showing the * * * [propriety] of the police conduct in the first instance” (People v Sutton, 47 AD2d 455, 459). In addition, this court concludes as a matter of law that the defendant voluntarily returned with the police to the parking lot across the street from the crime scene, and that the police therefore acted well within constitutional bounds in transporting the defendant there. It is this court’s opinion, however, that there was probable cause for the police to arrest defendant had he not consented to accompany the police.
The court’s conclusions of law merit some further comment.
*161 While the exhibition of a suspect to a witness without the use of a lineup has often been condemned as a violation of due process, a “showup” identification “is not per se improper and may be sustained where the witness is shown the suspect within a relatively short time after the incident” (People v Brnja, 70 AD2d 17, 23, affd 50 NY2d 366). Indeed, it has been stated that “[sjpeedy viewings, on the scene if possible, benefit both law enforcement and the defendant” (People v Blake, 35 NY2d 331, 337). “If the accused is identified as the culprit, the witness’ recollection will be as fresh and reliable as his capacity and the situation permit. If he is not identified, he may then be released with a minimum of delay”. (People v Brnja, supra, at p 24.)
In the instant case, the “showup” occurred within 25 minutes of the commission of the crime, defendant was apprehended a short distance from the crime scene, and the police were aware that Sharon P., who had given a description of the defendant, was still at the crime scene. The use of the “showup” under these circumstances permitted a quick and more accurate determination as to whether the defendant was the perpetrator and avoided the possibility that holding the defendant until such time as the lineup could be arranged might cause the detention of an innocent suspect. The police action in conducting the “showup” was therefore proper.
Of course, as with any identification procedure, it must be shown that — given the totality of the circumstances — the procedure was not so unnecessarily suggestive and conducive to mistaken identification so as to constitute a denial of defendant’s right to due process of law (People v Smith, 46 AD2d 639). In the present case, there were no handcuffs on defendant at the time the identification was made and there was no credible evidence adduced to indicate that the identification of defendant by the victim was the result of unnecessarily suggestive police action or that the identification itself was suggested by the police. In this regard, it should be noted that the fact that the police had told Sharon P. that a suspect had been found prior to her identification of defendant, standing by itself, is not sufficient to vitiate an otherwise proper identification (see People v Logan, 25 NY2d 184, 192).
*162 Finally, a few words are in order regarding defendant’s custody status at the time of the “showup”. While this court concluded from the testimony at this hearing that defendant voluntarily consented to accompany the police to the parking lot near the scene of the crime, the information given to Patrolman L. nevertheless established the requisite probable cause needed to take defendant into custody had he not consented. When the police first saw the defendant, it was within 20 to 25 minutes after the burglary and only a short distance away from it. Defendant closely matched the physical description given by the victim. While there may have been a difference between the victim’s estimate of and defendant’s actual height, it was only a minor discrepancy under the circumstances. In addition, at the time defendant identified himself as Michael Pasciuta, the police knew that a car registered to a person of that name was parked across the street from the scene of the crime. Further, upon questioning by the police, defendant gave answers which were at best inconsistent. Therefore, although the Court of Appeals has yet to decide whether the police need to possess probable cause to return a freshly apprehended suspect to a crime scene for identification (see People v Brnja, 50 NY2d 366, 374, supra), the court nonetheless concludes that the police herein would have acted well within the scope of permissible behavior in arresting the defendant for the purpose of conducting the “showup”.
It is interesting to note that in several jurisdictions outside of New York courts have held that an immediate “showup”, wheréin the suspect is briefly detained or transported back to the crime scene is permissible in the absence of probable cause to arrest.
In People v Lippert (89 Ill 2d 171, 181-182, cert den 459 US 841), the Supreme Court of Illinois stated that “the transportation of the defendant the short distance involved here for [the] purposes of a showup * * * [was] * * * a legitimate investigatory procedure even if one considers the grounds to have been less than probable cause to arrest.” The court noted that although the United States Supreme Court held custodial interrogation to be impermissible in the absence of probable cause in Dunaway *163 v New York (442 US 200), it nevertheless stated that the short period of detention was only minimally intrusive compared with the benefit of immediate investigation. “We do not believe that the court in Dunaway intended to eliminate effective and only minimally intrusive investigative techniques employed by police in the immediate search for the perpetrators of serious crime” (89 Ill 2d, at p 182).
Other jurisdictions have similarly approved such police conduct. In District of Columbia v M. M. (407 A2d 698), the District of Columbia Court of Appeals held that police action in transporting two suspects back to the crime scene was not an unreasonable intrusion in the absence of probable cause “given the brief period of time consumed in the transport,j the proximity of the place of the stop to the scene of the crime, and the purpose of the transport, viz., identifi- 0 cation by a known eyewitness to a confirmed robbery” (at p 701). In State v Merklein (388 So 2d 218 [Fla App]), the court upheld the validity of a detention of a suspect for 20 to 40 minutes pending the arrival of the victim and witnesses. The California Supreme Court in People v Harris (15 Cal 3d 384) stated that “[w]e can conceive of factual situations in which it might be quite reasonable to transport a suspect to the crime scene for possible identification” (p 391) although it further noted that “[ojrdinarily there exist less intrusive and more reasonable alternatives to pre-arrest transportation” (p 391).
It follows then that Sharon P. will be permitted to testify as to her prior out-of-court identification of defendant and will also be permitted to make an in-court identification of defendant.
Defendant’s application is denied.