OPINION OF THE COURT
Kristin Booth Glen, J.
This case involves a question left open by the Court of Appeals in People v Love (57 NY2d 1023), to wit, whether a showup may be justified as “necessary” when the suspect has already been identified by a police officer who was her/himself a witness to the crime. (Supra, at p 1024.) For the reasons discussed below, I hold that it may not.
FACTS
Briefly summarized, the relevant facts are as follows: On September 9, 1983, having been summoned by José Alvarez, a passerby who said he had just witnessed a robbery in progress, Police Officer Freddie Roman entered an apartment where he observed the defendant holding one Inocenzio Cruz at gun point. When Roman identified himself, the defendant Victor Delgado and an unapprehended perpetrator fled from the apartment by breaking through the glass of a bedroom window. Roman chased defendant through a vacant lot until other officers, responding to his partner’s radio call, apprehended Delgado as he ran into a parking lot. At the time of his apprehension, Delgado was bleeding from the hands, apparently from the broken glass in the window.
*1041 Immediately after Delgado was frisked and handcuffed he was placed in the rear of a police car and driven back to the scene of the crime. There he was removed from the car while Cruz was brought forward to identify him. Cruz did so in the presence of Alvarez who then indicated to the police that Delgado was the robber.
Defendant moves to suppress the in- and out-of-court identifications of both Cruz and Alvarez.[1]
DISCUSSION
The potential danger of incorrect identification testimony has long been recognized (see, e.g., United States v Wade, 388 US 218, 228), and showups have been widely condemned as an inherently suggestive identification procedure. (See Stovall v Denno, 388 US 293, 302, n 6; People v Dolphin, 77 AD2d 571, 572.) The rule excluding improperly obtained out-of-court identifications is different in both purpose and effect from the Fourth Amendment exclusionary rule. In People v Adams (53 NY2d 241, 250-251), the Court of Appeals wrote: “In * * * cases generally reliable evidence of guilt is suppressed because it was obtained illegally. Although this serves to deter future violations, it is collateral and essentially at variance with the truth-finding process * * * But the rule excluding improper pretrial identifications bears directly on guilt or innocence. It is designed to reduce the risk that the wrong person will be convicted as a result of suggestive identification procedures employed by the police.” Accordingly, it held that our State Constitution requires suppression of impermissibly or unnecessarily suggestive showup identifications even without an additional finding of unreliability. (People v Adams, supra, at pp 250-251, and see concurring opn of Cooke, Ch. J., at p 252.)[2] The sole question which must be determined in a suppression hearing is thus whether the showup was either “unnecessarily” or “impermissibly” suggestive.
Although they are so strongly disfavored, and although they are always to some degree suggestive, showups have *1042 been permitted because of the “necessity”,[3] or “imperative” of particular situations. (E.g., People v Brown, 20 NY2d 238, 243-244.) This “necessity” is frequently described as for the suspect’s benefit as well as the police’s — a prompt showup is said to insure that an innocent suspect will not be unnecessarily deprived of his/her liberty and may be released with a minimum of delay. (E.g., People v Blake, 35 NY2d 331; People v Brnja, 70 AD2d 17, 24, affd 50 NY2d 366.) The burden of showing such “necessity” or imperative is, however, clearly on the police who utilize a showup rather than the preferred and less suggestive lineup procedure. (See, e.g., People v Wells, 89 AD2d 784 [“The police offered no satisfactory explanation for such a flawed procedure”].) Thus, where particular facts indicate that there is no “necessity”, appellate courts have required the suppression of otherwise permissible showup identifications.
For example, in People v Mercado (63 AD2d 720), the defendant had been identified by two witnesses to a separate robbery at the time the complainant was brought to the precinct to view him. In reversing the trial court’s denial of defendant’s motion to suppress the second identification, the court found that “nothing would have been lost by delaying [complainant’s] identification for a few hours to allow the police to prepare a lineup.” (Supra.) The same rationale was employed in People v Osgood (89 AD2d 76, 81-82), where the defendant was in custody, and unlikely to be released because of his drunkenness. The court held that the victim “should not have been called to view him until preparations had been made to conduct a lineup” (supra, at p 82).
Indeed, the Appellate Division has gone farther, suppressing a showup identification where the defendant had not been arrested, but was readily available to the police. In People v Dolphin (supra), the defendant was roused from sleep in order to be shown to the complainant. The court wrote “Defendant’s identity was known and there was little likelihood that he would disappear. Having already waited two hours since the crime was committed, there was no justification of expediency, or other exigent circum *1043 stances which required a showup rather than utilizing the preferred procedure of a lineup”. (Supra, at p 573; emphasis added.)
Decisions on the suppression of identification testimony are almost inevitably fact specific, depending on the particular circumstances surrounding the showup (see discussion infra), and so offer little guidance to law enforcement officials other than the general proscription against showups which are impermissibly or unnecessarily suggestive — hardly a useful guide for the kinds of quick, on-the-street decisions police officers frequently make. The situation described in Love (supra) and found in the instant case, however, presents the opportunity for a “bright line” ruling which will both aid the police in obtaining admissible identifications and ensure that suspects’ due process rights are protected.[4] Accordingly, I hold that where a police officer is her/himself a witness to a crime and her/his identification of the suspect constitutes probable cause to arrest that suspect, a subsequent showup identification by the victim is, per se, “unreasonably” suggestive and must be suppressed.[5]
Alternatively, I find that the showup identification in this case was “impermissibly” suggestive. Courts have considered a number of factors in assessing the suggestiveness of a particular showup. Among these are (1) whether the suspect is wearing handcuffs (see People v Cobenais, 39 NY2d 968; People v Osgood, supra, at p 81;[6] People v Pasciuta, 122 Misc 2d 158); (2) where the showup is conducted in front of a group of witnesses (e.g., People v Adams, supra, at p 249;[7] People v Jackson, 80 AD2d 904; cf. People v Love, supra, at p 1024); (3) where police officers literally hold a suspect during the confrontation (People v Adams, supra, at p 248); or (4) where the suspect is viewed *1044 in the police car (e.g., People v Thomas, 72 AD2d 910, 912). In the instant case, all of these factors are present[8] and cannot but have impermissibly influenced the witnesses’ identification.
Having suppressed the out-of-court identifications of the complainant Cruz and the witness Alvarez, I find the People have met their burden of showing an independent basis for the in-court identification of both witnesses[9] (see, e.g., People v Cobenais, supra) and deny that portion of defendant’s motion which seeks to suppress those in-court identifications.

. The other issues raised by defendant were decided orally at the conclusion of a hearing held on June 12 and June 14, 1984.

. Under the Federal Constitution, the Supreme Court has required exclusion only of “unreliable” identifications, regardless of the suggestiveness of the procedures employed (see Manson v Brathwaite, 432 US 98).

. For example, in Stovall itself the hospitalized victim was seriously injured and “ ‘[n]o one knew how long [she] might live’ ” (388 US 293, 302).

. That is to say, having arrested a suspect who has been identified by a police officer, the suspect should be taken to the precinct where a lineup can be arranged.

. Of course, where there is a true emergency or exigency, such as the dying victim in Stovall v Denno (388 US 293), “necessity” may be shown.

. The court wrote (89 AD2d 76, 81), “the fact that the defendant was in handcuffs could not help but influence fthe victim’s] thinking that the ‘right man’ had been arrested.”

. Judge Wachtler wrote (53 NY2d 241, 249): “permitting the victims as a group to view the suspects, increased the likelihood that if one of them made an identification the others would concur.”

. The witnesses first saw the defendant driven up in the police car, then removed from the car by the officers. Although neither witness actually saw the handcuffs, the defendant’s hands were behind his back at all times, both witnesses had prior criminal experience and each testified that he believed the defendant was handcuffed.

. Each witness had an opportunity to view the defendant in adequate light, with substantial attention; each witness gave a reasonably accurate description of defendant and expressed certainty during both the in-court and showup identifications. Thus the tests of, e.g., Manson v Brathwaite (432 US 98) and Neil v Biggers (409 US 188) have been met, and the People have proven, by “clear and convincing proof” (People v Ballott, 20 NY2d 600, 607) that there is an independent source for each of their identifications.