**Nawatha SLATON, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 185S6.

Supreme Court of Indiana.

July 28, 1987.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-appellant, Nawatha Slaton, appeals his convictions for conversion, a class A misdemeanor (Ind. Code § 35–43–4–3), and two counts of attempted burglary, class B felonies (Ind. Code § 35–41–5–1 and § 35–43–2–1). Defendant raises the following issues for our review: 1) refusal to grant a new trial; 2) admissibility of in-court identification of defendant; 3) admissibility of evidence seized in search incident to arrest; 4) sufficiency of evidence; and, 5) reasonableness of the sentence. We affirm.

At approximately 5:00 a.m. on April 14, 1984, the victim was awakened by noises at the front door of her apartment. She testified that the noises sounded like one of the three locks on her door was being turned by a key from the outside. Peering through the glass in the door, the victim observed the defendant with "something on his hands." The defendant walked off the screened porch, walked to the victim's garage area, rummaged through the victim's car, and then walked back past the porch again. The victim notified the police. Officer John Haller and his canine unit were dispatched to the scene and tracked the

defendant for a short distance before losing the trail on a nearby side street. The victim discovered a small hole in the screened-in porch near the screen door and a bent coat hanger lying on the porch. She also discovered an open basement window and evidence that someone had entered her car. After the police left, the victim discovered that her key chain holding her apartment key and car keys was missing and remembered leaving the apartment key in the lock outside the front door the night before. She notified police and then had a locksmith change locks on her apartment doors and car.

In the early morning hours of April 18, the victim was again awakened by what she described as "the jingling of keys, as they hit a surface." She immediately called police. Officer Allen Byers responded to the call within approximately one minute and observed a large black man at the back of the victim's residence. The suspect appeared to spot the officer and flee. Officer Haller and his canine unit also responded to the call and drove immediately to the area where he had lost track of the burglary suspect four days earlier. Officer Haller spotted the defendant, observed a knife in defendant's hand and ordered the defendant to halt and drop the knife. Defendant dropped the knife but continued to flee. Haller and his dog pursued and eventually apprehended the defendant.

When apprehended, defendant had a black nylon sock over one of his hands. Officer Haller discovered another sock on the ground nearby. Upon searching defendant, Haller discovered a knife sheath and the keys which were subsequently identified as belonging to the victim.

### Issue 1

Defendant contends that a new trial is warranted due to the ineffective assistance of defense counsel or, alternatively, the existence of newly discovered material evidence.

Defendant cites two examples in support of his contention that he received ineffective assistance of counsel. The first involves a possible defense witness, Laquittia Dillard, who defense counsel failed to locate, interview or subpoena to testify on defendant's behalf. Defendant also contends that his trial counsel advised the sole defense witness to testify vaguely with respect to defendant's whereabouts at the time the first burglary attempt occurred.

██ ·Reversal for ineffective assistance of counsel is appropriate in cases where a defendant shows both (a) deficient performance by counsel, and (b) resulting prejudice from errors of counsel so serious as to deprive the defendant of a trial whose result is reliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. A claim of ineffective assistance must identify the claimed errors of counsel, so that the court may determine whether, in light of all circumstances, the counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Strickland, supra; Burr v. State* (1986), Ind., 492 N.E.2d 306; *Price v. State* (1985), Ind., 482 N.E.2d 719; *Jackson v. State* (1985), Ind., 483 N.E.2d 1374; *Seaton v. State* (1985), Ind., 478 N.E.2d 51.

At a post-trial hearing on defendant's motion to correct errors, Laquittia Dillard testified that during the course of an evening in either February or March, 1984, she watched the defendant perform sketch work at a local nightclub, Funky's II, and observed an unidentified white woman give a set of keys to the defendant. Dillard identified the victim's keys in a photograph as the same keys given to the defendant. Dillard initially revealed the information regarding the keys to one Sandra Johnson when Dillard attempted to employ Johnson

to perform a psychic reading for her. Johnson was a friend of the defendant and relayed this information to another of defendant's friends, one Martha Brownlie. Dillard testified that Brownlie contacted her with regard to testifying on defendant's behalf, but Dillard declined to testify voluntarily because of pressure from her husband.

Saundra Dial and Martha Brownlie both testified at the hearing that they relayed Dillard's information, along with Dillard's address and phone number, to defendant's attorney. Brownlie further testified that when she asked the attorney to subpoena Dillard, he responded, "I don't like to do that sort of thing." Dial and Brownlie allegedly contacted the attorney again the night before the trial and told him Dillard was available to be interviewed over the phone, yet he declined to do so. Brownlie further testified that on the day of the trial, defendant's attorney told her that it was her (Brownlie's) responsibility to get Dillard to the trial.

Defendant's attorney testified at the hearing that he initially became involved in the case upon the request of defendant's friends, Sandra Johnson, Saundra Dial and Marty Brownlie, a group which he referred to as the "Slaton Defense Committee." Defendant authorized his attorney to reveal confidential communications to them and the "Committee" was authorized to "act somewhat as agents for him (defendant)." The attorney testified that he was unaware of how to contact Dillard, and that he repeatedly asked Brownlie and Dial to have Dillard contact him. Brownlie and Dial assured him that they would bring Dillard in to interview, yet Dillard made no contact with the attorney prior to trial. The attorney decided not to subpoena Dillard because of her apparent refusal to come into his office voluntarily. The attorney was also led to believe that Dillard had previously been convicted of impeachable offenses. Moreover, there was some indication that Dillard's knowledge concerning the incident was derived from her psychic powers. Finally, the attorney became convinced that Dillard's testimony would have

been merely cumulative of Saundra Dial's, and that Dial made a superior witness.

■ Although we do not view the attorney's failure to even interview Dillard as a model of diligence, the circumstances lead us to conclude that it did not constitute ineffective assistance of counsel. Defense counsel was aware of Dillard's prior felony convictions and realized the potentially negative impact they could have on her credibility. Moreover, Saundra Dial, the only witness to testify in defendant's case-in-chief, testified that she was with defendant at Funky's II the evening prior to the first burglary attempt. She testified that a woman resembling the victim requested the defendant to come to her home later that same night to do some sketch work. The woman then allegedly gave the defendant a set of keys. Dial identified the victim's keys as those which were given to the defendant. In light of Dial's testimony, despite the discrepancy in dates, it was reasonable for defense counsel to view Dillard's testimony as merely cumulative. His decision not to subpoena Dillard was a matter of trial strategy and discretionary judgment. Moreover, in light of the overwhelming evidence linking defendant to the crimes, we are unpersuaded that counsel's failure to procure Dillard's testimony could have reasonably been expected to influence the outcome of the trial.

■ In addition to her trial testimony concerning the keys, Saundra Dial testified that she and the defendant left Funky's II at approximately 3:00 a.m. She was unable to recall where they went or what time they eventually arrived at defendant's home. She stated on re-direct examination that it was possible that defendant left his residence sometime during the early morning hours.

At the post-trial hearing, Dial testified that she had advised defendant's attorney that she had specific recollection that defendant was with her when the first burglary attempt allegedly occurred. She testified that defendant's attorney instructed her to be deliberately vague on the issue because the jury would not believe that she could have such specific recollection. This

allegation is in direct conflict with the testimony of defendant's attorney who, when confronted with the allegation at the post-trial hearing, responded:

No, I tried to press upon her that she had to be totally honest. In talking to her, I feared she was going to perjur [sic] herself, and not only would that be unethical for me to present such testimony, but also it would be a bad trial tactic I thought, that the jury would be able to detect that she was perjuring herself. I knew that she was a business partner of Mr. Slaton's and they were romantically involved. Obviously, the possibility for perjury in such a case is obvious, so I told her ... When she was telling me what she recalled, she'd be very specific about facts which would help the defense, and she'd be very vague about facts which would may [sic] hurt us, and I kept impressing upon her if facts upon which she was being specific were not true, she shouldn't testify that way, she should just be totally honest about the whole thing, and I think probably the main thing was, I believe she wanted to say, "Yes, it was Joyce Paddock", and I pinned her down in the conference room across the hall, and I asked her, "Are you sure it's the woman or are you sure it just looks like her?" Then she became vague and she said, "Well, she had similar hair length." "Similar color of hair" that's what it was, and she was less specific at that point, and I said, "If it's not, and you are not sure that it's her, don't testify that it is or if you think it looks like her, testify to that fact."

Defendant's argument with respect to the alleged instruction to the witness to testify vaguely is merely a request for this Court to reweigh the evidence and judge the credibility of the witnesses at the hearing on defendant's motion to correct errors. Such is the sole province of the trial court. *Moore v. State* (1980), 273 Ind. 268, 403 N.E.2d 335.

We do not find trial counsel's performance so seriously deficient as to undermine the reliability of the trial.

Defendant contends that if defense counsel's failure to procure Laquittia Dillard's testimony does not constitute ineffective assistance of counsel, then the discovery of Dillard's testimony should be deemed newly discovered material evidence warranting a new trial. The standards applied in reviewing defendant's claim were stated in *Smith v. State* (1982), Ind., 429 N.E.2d 956, 958, (quoting *Emerson v. State* (1972), 259 Ind. 399, 406–07, 287 N.E.2d 867, 871–72):

"An application for a new trial, made on the ground of newly discovered evidence, must be supported by affidavit and such affidavit or affidavits must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Cansler v. State*, (1972) 258 Ind. 450, 281 N.E.2d 881; *Tungate v. State*, (1958) 238 Ind. 48, 147 N.E.2d 232. In deciding whether a piece of evidence would produce a different result the presiding judge may properly consider the weight which a reasonable trier of fact would give it, and while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case."

Ruling on a request for a new trial based on newly discovered evidence is within the trial court's discretion and will not be disturbed absent an abuse of discretion. *Moredock v. State* (1982), Ind., 441 N.E.2d 1372. Applying these standards, we decline defendant's argument.

The defendant, defendant's friends and defense counsel were all aware of the essence of Dillard's testimony prior to trial. In view of Saundra Dial's testimony, it is reasonable to conclude that Dillard's testimony was merely cumulative. Moreover, we find that her testimony was unlikely to produce a different result. Consequently,

we find no abuse of the trial court's discretion in denying defendant's motion for a new trial.

### Issue 2

Defendant contends that the victim's in-court identification was based on an impermissibly suggestive pre-trial confrontation, thus the admission into evidence of the identification constituted a violation of due process.

■ In *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the United States Supreme Court noted that a show-up procedure may be so unnecessarily suggestive and so conducive to irreparable mistake as to constitute a violation of due process. Such a claimed violation is to be examined in light of the totality of the circumstances surrounding it. *Id.* A *per se* rule of exclusion regarding pre-trial identification evidence involving suggestion or unnecessary procedures was rejected in *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, in favor of a rule which permits the admission of such evidence if, under the totality of circumstances, the identification is reliable. *Id.* at 109-14, 97 S.Ct. at 2250-2253, 53 L.Ed.2d at 151-54. *See also Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. The analysis of defendant's contention of error thus involves a two step analysis.

The first question is whether the initial identification procedure was unnecessarily or impermissibly suggestive. As noted in *Stovall*, "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206 (citing, *inter alia*, P. Wall, *Eye-Witness Identification in Criminal Cases* (1965) wherein the author opined that show-ups are "the most grossly suggestive identification procedure now or ever used by the police"). This Court has also recognized the inherent suggestiveness of such one-on-one confrontations. *Head v. State* (1982), 443 N.E.2d 44; *Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509; *Cooper v. State* (1977), 265 Ind. 700, 359 N.E.2d 532.

Nevertheless, we have permitted such procedures when they occur shortly after the commission of the crime "because of the value of permitting a witness to view a suspect while the image of the perpetrator is fresh in the witness's mind." *Head v. State*, 443 N.E.2d at 55. "Likewise, such confrontations have been found proper where circumstances rendered an alternative approach such as a line-up impossible." *Id.* at 55-56 (citing *Duffy v. State* (1981), Ind., 415 N.E.2d 715; *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193).

In the instant case, police apprehended the defendant within minutes after the second burglary attempt occurred on April 18. Police officers immediately took the defendant to the victim's residence. Without disclosing the fact that the key ring had been obtained in the search of the defendant incident to his arrest, the police asked the victim if she could identify the keys. The victim identified them as those missing from her apartment since April 14. The police then removed the handcuffed defendant from the police car and asked the victim if she had ever seen him before. However, they failed to first determine whether the victim had even observed the perpetrator of the second burglary. The victim identified the defendant as the man she had observed on her porch in the early morning hours of April 14 when the first burglary attempt occurred.

■ Analyzing this particular one-on-one confrontation in the totality of the circumstances, we view it as an unnecessary and impermissible pre-trial identification. Without first ascertaining that the victim had seen the perpetrator so as to have a fresh image in her mind, police returned the defendant to the scene alone in a police car, handcuffed and obviously in custody. The extreme suggestiveness of the face-to-face confrontation was then further enhanced by the fact that the victim's keys, stolen in the first burglary attempt, were shown to the victim immediately prior to the police inquiry as to whether she (the victim) had ever seen the defendant. Although the police did not indicate that the keys were recovered from the defendant,

the inference was manifest, thereby placing the defendant in a setting which marked him conspicuously as "the" suspect. *Cf. United States ex rel. Barnwell v. Rundle* (E.D.Pa.1972) 337 F.Supp. 688, *aff'd*, 474 F.2d 1337 (3rd Cir.1972) (identification of defendant not admissible as result of highly suggestive show-up, where witness, immediately prior to confrontation, was shown a scarf taken from defendant and identified by another witness as belonging to other witness). We can discern no good reason for the police failure to resort to a less suggestive method of identification.

 Having concluded that the procedure was unnecessarily suggestive, we proceed to the second step of the analysis. Unnecessary suggestiveness without more does not violate due process. *Neil v. Biggers*, 409 U.S. at 198–199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. As stated in *Manson*, *supra*, "reliability is the linchpin." 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. The question becomes whether under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. We find that an adequate independent basis for the identification here existed to warrant the admission of the identification. *See Whitlock v. State* (1981), Ind., 426 N.E.2d 1292; *Williams v. State* (1979), 271 Ind. 656, 395 N.E.2d 239.

The victim testified in the pre-trial suppression hearing that she had an opportunity to observe the defendant for approximately ten minutes on the morning of April 14. She testified that it was after dawn and the lighting conditions were favorable. At one time, she was as close as two to three feet away from the defendant. Under the facts of this case, we find that the opportunity for the victim to view the defendant rendered her in-court identification admissible, notwithstanding the intervening unnecessary show-up. *Cf. People v. Delgado* (1984), 124 Misc.2d 1040, 478 N.Y. S.2d 575 (where defendant was driven, by police, to scene of crime for identification

by witnesses, removed from police car with handcuffs behind his back, show-up was impermissibly suggestive, however, since witnesses had independent basis for in-court identification, identification would be permitted).

Under the facts of this case, we find that the opportunity for the victim to view the defendant rendered her in-court identification admissible, notwithstanding the intervening unnecessary and improper show-up.

### Issue 3

Defendant argues that the evidence seized by officers in the search incident to defendant's arrest should have been suppressed because police arrested the defendant without probable cause. This argument is without merit.

 Probable cause exists when at the time of arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question. *Green v. State* (1984), Ind., 461 N.E.2d 108; *Funk v. State* (1981), Ind., 427 N.E.2d 1081.

 Officer Allen Byers responded within approximately one minute to the victim's call concerning the second burglary attempt. Byers observed a black man at the rear door of the victim's apartment. The suspect fled after seeing the officer.

Officer John Haller and his canine unit also responded to the call. The dispatcher described the suspect as a large black male with a red windbreaker. Haller was aware that the attempt was occurring at the same residence where he had investigated four days earlier, thus he proceeded directly to the area where his dog had lost track of the suspect previously. Haller spotted the defendant, observed a knife in his hand, then ordered the defendant to halt and drop the knife. Defendant dropped the knife and fled. Upon Haller's orders, his police dog pursued, attacked and detained the defendant until Haller could catch up. Haller described the apprehension as follows:

"As I came around the corner, the dog had grabbed the suspect, and the suspect was fighting, trying to pull himself away from the dog, and I tackled the suspect, and he and I and the dog all three went to the ground, and at that point, I began to try and put the cuffs on him.

\* \* \* \* \* \*

When I first grabbed him ... when I first got around the corner, I had my flashlight on him. I noticed he had a, ah ... socks on each hand or he had just one on his hand at that point and he was trying to pull ... he was reaching to pull that sock off, and he flung it down on the ground, and then he reached into his coat pocket, as I was tackling him, and we wrestled around. He kept trying to get into his jacket pocket, and Officer Barnes and Riley came up and assisted me getting the cuffs on him. I thought he may have another weapon in his pocket, and I reached in his pocket and it was a key ring, which was later found to belong to the complainant."

Officer Haller's knowledge of the facts and circumstances would warrant a man of reasonable caution to believe that the defendant committed the crime. Probable cause existed for the warrantless arrest, and the evidence seized in the search incident to the lawful arrest was properly admitted at trial. *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Green v. State* (1984), Ind., 461 N.E.2d 108.

### Issue 4

Defendant contends that the evidence was insufficient to sustain his two convictions for attempted burglary. As charged by the informations, it was incumbent upon the State to show 1) that defendant took a substantial step toward breaking and entering the victim's residence, and 2) the defendant did so with the intent to commit theft. Ind. Code § 35-43-2-1 and § 35-41-5-1. Defendant specifically claims that the attempted burglary convictions are unsupported due to a total lack of evidence to support the conclusion that he had intent to commit theft.

In reviewing this claim, we will neither weigh the evidence nor judge the credibility of witnesses. We will consider only that evidence most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. If there exists substantial evidence of probative value to support the jury's conclusion, the verdict will not be overturned. *McAbee v. State* (1984), Ind., 459 N.E.2d 1186. The verdict may be based solely upon circumstantial evidence and we are not required to find that such evidence is adequate to overcome every reasonable hypothesis of innocence. *Id.*

The evidence is sufficient to establish that on April 14, 1984, the defendant gained entry to the victim's porch by making a hole in the screen door of the porch and then attempted to enter the victim's apartment without her consent by using the victim's key. The evidence also supports the conclusion that the defendant unsuccessfully attempted to enter the victim's apartment again on April 18. The use of stockings upon defendant's hands also supports the reasonable inference that he intended to avoid leaving fingerprints and therefore intended to commit *some* criminal offense, but it is impossible to infer therefrom which offense defendant intended once inside.

Intent to commit a felony may be inferred from circumstances, including the time, force and manner in which an entry is made. *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841. In the instant case, the evidence indicates that immediately following defendant's first attempt to gain entry, he entered and rummaged through the victim's car. We find this relevant to support a reasonable inference that defendant intended theft rather than rape, arson, or another possible offense during the episode. *See Feyerchak v. State* (1978), 270 Ind. 153, 383 N.E.2d 1027. We therefore hold that the evidence was sufficient to sustain the convictions.

### Issue 5

The trial court sentenced the defendant to a maximum one year prison sentence on

his conviction for conversion, and enhanced the presumptive ten-year sentences on both burglary convictions by ten years each. The court also ordered the sentences, totalling forty-one years, to be served consecutively. The defendant contends that the sentence imposed is manifestly unreasonable in light of his character and attempt to become a useful productive member of society.

■■■■ The decision to impose enhanced or consecutive sentences is a matter within the sound discretion of the trial court. *Smith v. State* (1985), Ind., 474 N.E.2d 71. Ind. Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include "a statement of the court's reasons for selecting the sentence that it imposes." The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250; *Jones v. State* (1984), Ind., 486 N.E.2d 519. The sentencing judge in the instant case complied with these requirements.

■■ In the sentencing statement, the judge noted the defendant's extensive prior criminal history including: convictions in North Carolina for assault, four counts of attempted burglary and multiple counts of breaking and entering; convictions in Kentucky on two counts of breaking and entering; convictions in Ohio for rape, armed robbery, and abduction for immoral purposes. Moreover, defendant had been paroled only five to six months prior to the incidents giving rise to the instant convictions. In addition, the court found that defendant's possession of a deadly weapon during the commission of one of the offenses and his use of socks, as a means of hiding fingerprints, were aggravating circumstances.

The court also articulated and balanced the mitigating circumstances urged by defendant:

> Court further finds also and notes that Mr. Slaton you are quite obviously a bright, articulate individual who has talent and who perhaps in effect tried to break the chain of what appears to be almost constant criminal sprees. And that also there are a number of people who attempted to help you. This Court also has to deal with the realities of this case and the experience of which it has. The realities of this case are that you have an incredible criminal record stretching almost twenty (20) years involving crimes of breaking and entering, charges of rapes, armed robbery, breaking into people's houses. That in two (2) instances you were given a substantial break by the convicting jurisdiction that in North Carolina and Kentucky in terms of the offenses for which you were charged and convicted and the sentence which you received. And it appears to this Court that your need of rehabilitation that can only be obtained by incarceration in a penal institution in the State of Indiana and the Court is forced to agree with the contention of the State that to impose anything less than the maximum sentence in this case would lessen the seriousness of your record, the offense that you have committed and the offenses which you were charged with and convicted with in this case.

The defendant's sentence was not manifestly unreasonable, and the trial court did not abuse its discretion in imposing such a sentence.

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., concurs in result without opinion.

PIVARNIK, J., concurs in result with separate opinion in which GIVAN, J., concurs.

PIVARNIK, Justice, Concurring in result only.

I concur, in result only, in this opinion, because I do not agree with the majority's analysis of the allegedly impermissibly suggestive pretrial confrontation in Issue II. The majority indicates that the one-on-one confrontation was unnecessary and involved a procedure disapproved of by this Court. I would not so characterize the confrontation between the defendant and the victim in this case. It is my view this Court has approved of an immediate confrontation by the victim on many occasions. In *Whitlock v. State* (1981), Ind., 426 N.E.2d 1292, 1293, this Court found:

> "Confrontations between eyewitnesses and suspects immediately after the commission of a crime are permitted for the reason that it is valuable to have witnesses view a suspect while the image of the offender is fresh in their minds. *Rogers v. State* (1979) [272] Ind. [65], 396 N.E.2d 348; *Williams v. State* (1979), [271] Ind. [656], 395 N.E.2d 239; *McPhearson v. State* (1969), 253 Ind. 254, 253 N.E.2d 226. Whether any particular one-on-one confrontation is unduly suggestive is dependent upon the circumstances in which it is conducted."

Here, the defendant was apprehended minutes after his attempt to enter the victim's home. He was immediately returned to the presence of the victim where she identified him as the person who had tried to enter her home on the first burglary attempt. The majority concedes the record shows the officers were unaware the victim had not observed the perpetrator during the course of the second burglary attempt. I do not see this as an unnecessary confrontation that merits disapproval by this Court. The defendant had left the victim's property only minutes before, and the police were unaware that she had not seen the perpetrator on this second attempt as she had on the first attempt four days before. Thus, it seems the police had a very good basis for believing the victim had a fresh image of the perpetrator in mind. As a matter of fact, she did have the ability to identify him from the first attempted burglary and she was able to identify the keys found on his person. I therefore do not find the confrontation procedure used by the police here to be unduly suggestive. I concur in the result reached by the majority in this opinion.

GIVAN, J., concurs.