Chief Judge Fum.
FolloAving his second trial — the first ended in a disagreement — the defendant Avas convicted of robbery, as well as of related crimes of grand larceny and assault, and sentenced to imprisonment for a term of from 15 to 30 years. He seeks a reversal on íavo grounds, first, that he was improperly denied a copy of the minutes of the prior trial and, second, that the pretrial identification procedure adopted by the police violated his constitutional rights.
Miriam Seidman and Bose Scipone Avorked for the M. N. Axim Lumber Company in Queens County. It was the task of those employees, each Friday, to drive to the bank and pick up the company payroll of about $5,000 and then return to the company’s offices Avith the money in an envelope. On the Friday in question, January 18, 1963, as they were about to alight from their car, a Negro, wearing a hat and a heavy overcoat, Avith turned up collar, appeared at the window and demanded the envelope, threatening to shoot if it was not turned oyer to him. Frightened, Mrs. Seidman handed him the envelope and *603 Mrs. Scipone gave him her purse containing $27. The robber then fled.
The defendant was arrested a year later, having been implicated in the robbery by a man named Doyle. The latter, questioned a short time after the robbery, declared that, having learned of the payroll procedure from one of the lumber company’s employees, he and the defendant Ballott had planned the commission of the crime. Doyle pleaded guilty to conspiracy to commit larceny, a misdemeanor, and subsequently testified against the defendant.
Mrs. Scipone testified upon the trial that she had not seen the face of the robber and only Mrs. Seidman identified the defendant as the man who had held them up. It was disclosed, during the course of her testimony, that in January, 1964, a year after the robbery, the police had exhibited to her the defendant, alone in a room in the station house, and that she had then stated that he was the person who committed the robbery. It also appeared that she had identified the defendant only after he had, at her request, donned a hat and a heavy coat —• similar to those worn by the robber — and uttered the words — somewhat like those spoken — “ give me the money, give me the envelope ”. Mrs. Seidman acknowledged that she made her identification only after she had heard the defendant speak.
An indictment, returned against the defendant in February, 1964, was dismissed upon the ground that the identification testimony before the Grand Jury was “ambiguous”. Another indictment was returned against him some time later and this is the one upon which he has been tried and convicted. The appeal is before us following an affirmance by a closely divided Appellate Division.
As noted above, the defendant was tried twice. The first trial, in September of 1964, resulted in a jury disagreement and the declaration of a mistrial. After the court set the case down for a new trial, it appeared on the calendar on several days in October and November. On December 7, when it was again called, the defendant requested a postponement in order to obtain the minutes of the earlier trial. The request was granted and the case was put over until February 1, 1965. On that day, the defendant sought a further adjournment of “ a week ” which, he said, it would take him to raise the money to purchase the *604 minutes. He explained that their cost was $300, that he had about $250 and that he needed the extra week to obtain the balance. The court denied the application, observing that he had had ‘ ‘ sufficient time ’ ’ to procure them. The case then proceeded to trial.
The defendant asserts that the court’s ruling denied him equal protection of the laws; that he was, in effect, deprived, by reason of his indigency, of his right to confront the witnesses against him with their .prior testimony and to prepare an adequate defense.
In a case such as the present — where the first indictment had been dismissed because of insufficient evidence of identity and the first trial had resulted in a mistrial because the jury had been unable to agree on a verdict — the defendant’s need for the minutes of the earlier trial is particularly obvious. Under the circumstances, the defense was “ entitled ” to procure the testimony previously given by the witnesses who were again to testify against him in order to enable him to conduct an effective cross-examination. (See, e.g., People v. Rosario, 9 N Y 2d 286, 289; People v. Malinsky, 15 N Y 2d 86, 90.) Without such testimony, a defendant is deprived of a substantial right. And, where he is an indigent, the State must make that testimony available to him. (See People v. Montgomery, 18 N Y 2d 993; People v. Jaglom, 17 N Y 2d 162, 165; Williams v. United States, 358 F. 2d 325 [9th Cir.]; Peterson v. United States, 351 F. 2d 606 [9th Cir.]; People v. Miller, 35 Ill. 2d 615.) Although the defendant did not at the trial expressly claim indigency and demand that the prosecution provide him Avith the minutes, it was evident that he was then financially unable to obtain them. Since this inability resulted in a deprivation of a substantial right, he was denied equal protection of the laws. (See Griffin v. Illinois, 351 U. S. 12.)
However, even if it were to be said that the absence of a specific claim of indigency prevents the defendant from now urging a denial of that constitutional right, there must be a reversal since the trial court’s refusal to grant an adjournment constituted an abuse of discretion as a matter of law. The defendant desired a delay of but a week, solely for the purpose of raising the $50 needed to purchase the minutes of the first trial. He had a fundamental right to the testimony of the Avit *605 nesses who were to testify against him and, surely, one who is attempting to pay for such testimony should be given every reasonable opportunity to do so. Under the circumstances, the court either should have adjourned the case or should have directed that the minutes be transcribed at public expense and furnished to the defendant. Its failure to do one or the other effectively prevented the defendant from exercising his right and was, therefore, an abuse of discretion. (Cf., e.g., People v. Snyder, 297 N. Y. 81, 90; People v. McLaughlin, 291 N. Y. 480.)
The defendant also urges that the police station identification procedure was violative of constitutional guarantees and that it rendered Mrs. Seidman’s in-court identification inadmissible.
Contrary to one of the defendant’s arguments on this phase of the case, neither the identification procedure employed by the police nor anything which the defendant was called upon to do at the police station — in order to approximate the appearance and conduct of the robber — violated his privilege against self incrimination. (See United, States v. Wade, 388 U. S. 218, 221-223; Schmerber v. California, 384 U. S. 757, 761.)[1] Nor was his right to counsel denied in view of the Supreme Court’s determination that the rules announced in the Wade case (388 U. S. 218, supra) and Gilbert v. California (388 U. S. 263) should not be applied retroactively. (See Stovall v. Denno, 388 U. S. 293, 296, 301.) Nor do our decisions in People v. Waterman (9 N Y 2d 561), People v. Di Biasi (7 N Y 2d 544) and similar cases assist the defendant. They, too, are predicated on the privilege against self incrimination (see People v. Waterman, 9 N Y 2d, at p. 566), and, as the Supreme Court recently observed in Wade (388 U. S., at p. 221), that privilege “ ‘ protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature * * * ’ Schmerber v. California, 384 U. S. 757, 761.”
However, a pretrial identification procedure, even though not violative of the defendant’s right to counsel or of his privilege *606 against self incrimination, may be so unfair as to amount to a denial of due process of law. (See People v. Brown, 20 N Y 2d 238, 243-244; Stovall v. Denno, 388 U. S. 293, 299, 301-302, supra; Palmer v. Peyton, 359 F. 2d 199 [4th Cir.].) In the Stovall case (388 U. S., at p. 302), the Supreme Court pointed out that “ [tjhe practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned ” and, in Brown, a majority of our court very recently declared that (20 N Y 2d, at pp. 243-244)
‘ ‘ Absent [1] imperative ’ circumstances necessitating resort to such a procedure, the practice of having a witness secretly view, for identification purposes, only the very suspect whom the police have taken into custody for the crime can be ‘ so unnecessarily suggestive and conducive to irreparable mistaken identification ’ as to amount to a denial of due process of law ”.
This, though, does not mean that Mrs. Seidman’s testimony identifying the defendant in court should have been — or upon the new trial should be — necessarily excluded. It may well be that she would have been able to make an in-court identification of him even if there had been no police station show-up. The record does not permit us to make ‘ an informed judgment ’ ’ whether the in-court identification had an “ independent source ”. (Gilbert v. California, 388 U. S. 263, 272, supra.) As the Supreme Court has held, once the pretrial identification procedure is shown to be impermissible and improper, any in-court identifications, though not per se excludable, are not to be received in evidence ‘ ‘ without first determining that they were not tainted by the illegal lineup but were of independent origin”. (Gilbert v. California, 388 U. S., at p. 272.) Consequently, upon the new trial to be had herein, the court should, in the first instance — and out of the presence of the jury— give the People an opportunity to prove by “ clear and convincing evidence ” that the in-court identification was based upon observations of the suspect other than the show-up identification. (United States v. Wade, 388 U. S. 218, 240, supra.) Only if the prosecution can establish this may the in-court identification be admitted for the consideration of the jury. On the other hand, *607 if Hiere is no such clear and convincing proof, the court must exclude that identification.
Nothing decided or stated in People v. Brown (20 N Y 2d 238, supra), upon which the district attorney relies, militates against this result. The victim in that case had been in the company of the thief for several hours and had ample opportunity to closely observe him before and during the commission of the crime (larceny by means of false representation). It was the court’s conclusion that the “ impermissible ” police station identification was to be regarded, under the circumstances presented, as “not prejudicial” (p. 243) and stamped as “harmless error ” (p. 244), since it was manifest that the witness’ in-court identification was not “based on, or tainted by,” the pretrial identification (p. 244). The facts in the present case are very different. Here, in sharp contrast, Mrs. Seidman, a white woman, saw the robber, a Negro, wearing a hat and a heavy coat but for a few minutes during a frightening and upsetting episode. We cannot say, as we could in Broion, that on the record before us the in-court identification was not predicated, at least in part, upon the earlier grossly and unnecessarily suggestive show-up in the police station a year after the crime had been committed.
In sum, then — there must be a new trial at which the defendant (who has been in prison for two years) will be entitled to the minutes of the earlier trials, by purchase if he has the money to pay for them or at the public expense if he establishes his inability to do so. And, upon the retrial, the People may introduce Mrs. Seidman’s in-court identification only if they establish, by clear and convincing proof, at a hearing to be held by the judge out of the presence of the jury, that it is based upon observations of the suspect other than the police station identification.
The judgment should be reversed and a new trial ordered in accordance with tills opinion.
Opinion by Chief Judge Fuld. All concur, Judge Keating in result, except Judges Van Voorhis and Scileppi who dissent and vote to affirm.
Judgment reversed, etc.

. In Wade (388 U. S. 218, supra), the court wrote (p. 222): “We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the ■ accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have.”