■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THEODORE LEONARD, Also Known as NEWBY SELTON, SELTON NEWBY, JOHN PITTS, SELBY NOONAN, JOHN WILLIAMS and CLARENCE WILLIAMS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered September 7, 1977, convicting him of attempted robbery in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, indictment dismissed and the case is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. Defendant Leonard and his codefendant, Thomas Brown, were indicted following an incident which occurred in the early morning hours in November, 1976. The complaining witness, Manuel Mendez, was sitting alone in an "F" train subway car at the Stillwell Avenue, Coney Island station. He had apparently been dozing. Two men, one of them holding a knife, entered the car and approached Mendez. He kicked at one of them, ran out of the car, and sought help from the transit police. Accompanied by a police officer, he returned to the "F" train, where one of the perpetrators, later identified as Brown, was found. Brown was taken to the police district office located in the station. By the time Mendez and the police returned to the station platform to look for the second perpetrator the train had pulled out. Mendez had described the second perpetrator as a Black man, aged 38-45, with a "wide face," wearing a coat and hat. After returning once again to the district office, the police telephoned a description of the man to a Lieutenant Reiter, who was cruising in a patrol car farther north in Brooklyn. Reiter and his companion, Officer Kirkland, intercepted the "F" train and spotted a Black man with a hat and coat, sitting on the train. Since the man appeared to be significantly older than the description had indicated, he was not arrested. The man, later identified as Leonard, was in fact 63 at the time. Reiter and Kirkland drove back to the district office. Meanwhile Mendez had been told to look at the many photographs on the wall of the district office. He do so for about two minutes but could not identify the second perpetrator. After arriving at the district office Officer Kirkland walked over to the wall and selected a photograph which, both he and Lieutenant Reiter agreed was the man they had seen on the "F" train. The single photograph, which pictured Leonard, was shown to Mendez, who promptly identified the man as his assailant. Leonard was arrested at his home on the following day. At the *Wade* hearing and trial Mendez identified Brown and Leonard. He testified that the entire incident on the train had lasted two to four seconds. The trial court erred in denying the motion to suppress Mendez' in-court identification of Leonard. The display of a single photograph to Mendez was, in these circumstances, extremely suggestive and prejudicial. Nor was it established that the in-court identification was based upon an independent source (see *People v Ballott*, 20 NY2d 600, 606). Mendez, who was at best drowsy at the time, viewed his assailants for no more than a few seconds during the incident. Moreover, his description of the second perpetrator did not accurately describe Leonard. Since no other evidence linked Leonard with the crime, the properly admitted evidence did not establish his guilt beyond a reasonable doubt. Accordingly, the indictment must be dismissed. Latham, J. P., Rabin, Cohalan and Margett, JJ., concur.