■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY MARTIN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Kellam, J.), rendered February 16, 1983, convicting him of robbery in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial by the same court (Agresta, J.), of that branch of defendant's pretrial motion which sought to suppress complainant's in-court identification testimony of him and a certain statement made by him. ¶ Judgment reversed, on the law and the facts, that branch of defendant's pretrial motion which sought to suppress complainant's in-court identification of him granted, and matter remitted to the Supreme Court, Queens County, for further proceedings not inconsistent herewith. ¶ Under the circumstances, Criminal Term erred in finding that the complainant would be permitted to make an in-court identification of the defendant, despite an impermissibly suggestive pretrial showup, on the ground that the complainant's opportunity to observe the defendant at the time of the robbery gave the identification an independent source (see *United States v Wade,* 388 US 218). Complainant was accosted by three men who forced their way into her automobile when she braked to avoid hitting a bicyclist on 31st Avenue in Queens at about 11:30 P.M. on April 13, 1982. Two of the men got into the front seat beside her while the third man sat in the back. The three men drove her about, stalling the car frequently, for approximately eight minutes, during which time they repeatedly punched her about the face, forcibly removed all of her jewelry and money, and made threatening remarks. The interior dome light of the car was lit for the first two or three minutes of the incident and intermittently thereafter as a result of complainant succeeding in kicking her door open on the passenger's side. Complainant testified that she was able to look over at the two men seated beside her in the front during the struggle and that she saw them clearly. She did not manage to get a look at the man seated in the rear, however, and only knew that he was black. The police recovered her car shortly after the incident occurred in the vicinity where she had managed to escape when the car stalled. She was then brought to the precinct at about 1:30 A.M. to make an identification, after having been told by the police, "[W]e have three guys in the car * * * we think it's them". According to Officer Gary Kaplan, complainant identified the defendant and codefendant Abramson as the men who had sat in the front seat. She was unable to identify the third suspect until he suddenly yelled out at her, whereupon she identified codefendant Johnson as the man who had sat in the back, stating that she recognized his "very brusque" voice. At the *Wade* hearing, however, complainant initially testified that it was Johnson who had sat in the front with Abramson and that defendant had sat in the back of the car. On cross-examination, she conceded that she was unsure whether Johnson or the defendant had driven the car but stated that she knew the driver was "one of the other two", but not Abramson. Yet she admittedly never had an opportunity to observe the man seated in the back of the car during the robbery.

Moreover, immediately after the robbery occurred, she was able to give the police only a vague description of the driver, stating that he was a male black in his teens with a black cap. In addition, she testified that she noticed nothing unusual about her assailants' appearances except that the two men in the front seat did not have beards and the one closest to her, whom she identified as Abramson, "looked young". Finally, she testified that during the two or three minutes that the dome light was on, the man seated in the rear was pulling her head back by the hair so that her head rested on the headrest and she faced the ceiling. We cannot say on this record that the People met their burden of demonstrating by clear and convincing evidence that an independent basis would exist for complainant's in-court identification of the defendant (see *People v Ballott,* 20 NY2d 600, 606; *People v Ford,* 100 AD2d 941). Although complainant gave several answers which indicated her ability to observe the driver, the objective facts, as described above, do not support these assertions (see *People v Boyce,* 89 AD2d 623, 623-625; see, also, *People v Ford, supra*). It is apparent that complainant's inability to state with any degree of certainty whether defendant was the man who sat in the front, whom she said she remembered "vividly", or whether he sat in the back, in which case he was the one man she never saw, negates the possibility that an in-court identification would be based upon her visual observations at the time of the crime. Accordingly, that branch of defendant's motion which sought to suppress her in-court identification of him should have been granted. We have examined the defendant's remaining contentions and find them to be without merit. Titone, J. P., Mangano, Thompson and Brown, JJ., concur.