■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE RUBIO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Sangiorgio, J.), rendered November 10, 1983, convicting him of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree, upon a jury verdict, and imposing sentence.

Appeal held in abeyance, and matter remitted to the Supreme Court, Richmond County, for' the purpose of conducting a Wade hearing in accordance herewith. Criminal Term shall conduct the hearing and file a report containing its findings and conclusions with respect thereto in this court with all convenient speed.

The charges in this case arose out of an alleged sale of

heroin in which the defendant acted as an intermediary between the seller, known only as "Les", and the buyers, an undercover police officer and his confidential informant. In order to avoid exposure of the true identities of the officer and the informant, no arrest was made at the time of the alleged transaction, which lasted no more than five minutes, and, when the police returned to the scene several hours later, the suspects could not be located. Twenty-seven days later, the informant spotted the defendant in the vicinity of the location in which the sale had taken place. The police were notified and the defendant was arrested. He was brought to the station house, and the undercover officer was advised that one of the persons involved in that particular sale had been arrested. The officer viewed the suspect through a one-way mirror and identified him.

In one branch of the defendant's pretrial omnibus motion he requested a *Wade* hearing, seeking, *inter alia,* to suppress evidence of the undercover officer's station house identification as having been unduly suggestive. That branch of the defendant's motion was denied and, at the ensuing trial, the officer gave testimony regarding his observation and identification of the defendant at the precinct. The officer also testified that in his two years of undercover work, he had been involved in approximately 500 drug cases and, because of the large number of persons from whom he had purchased drugs, he was unable to recall each one and found it necessary to refresh his recollection by using his notes.

Under the circumstances presented in this case, the question of whether the postarrest station house viewing constituted an improper identification or merely a confirmation of a previously established identification should not have been determined without first conducting a *Wade* hearing.

While a station house viewing may not constitute an identification procedure, but may merely be a confirmation of the undercover officer's prior identification in order to assure that the wrong person had not been mistakenly arrested *(see, People v Morales,* 37 NY2d 262, 271-272), we do not read *Morales* as having dispensed with the necessity of having a *Wade* hearing in all cases. Notwithstanding the recognized expertise of police officers in identification situations, where the circumstances suggest that a reasonable possibility exists that the officer's identification of the defendant might be the product of the station house viewing rather than the initial observations made during the crime, a *Wade* hearing is desirable.

The facts in this case suggest the reasonable possibility that the undercover officer's identification of the defendant may have been influenced by a suggestive station house showup so as to require a *Wade* hearing *(cf. People v Stanton,* 108 AD2d 688, 689). Accordingly, we remit this matter for the purpose of conducting a *Wade* hearing. Bracken, J. P., Rubin, Lawrence and Eiber, JJ., concur.