OPINION OF THE COURT
Harold Fertig, J.
"Showup” identification procedures are generally required to confirm the identity of a subject based upon a complainant’s description of a perpetrator. This case involves an incident where the "showup” was conducted after the complainant pointed out the alleged perpetrator to police officers and the officers had an opportunity to observe him themselves.
After a hearing to determine the admissibility of an identifi *141 cation conducted in the street shortly after an incident, the court makes the following findings and determinations.
On April 10, 1986, at about 7:30 p.m., Officer John Bruno received a radio message that a robbery had just taken place at 377 East 52nd Street, Brooklyn, New York. Officer Bruno immediately approached that location and upon turning the corner to 52nd Street, he observed two black males two houses away from the aforementioned location. He and his partner approached them and was told by one, who he later learned was Jimmy St. Die, that the individual who just tried to steal chains and hurt him with a gun was standing two houses away, down the street about 100 feet. As he made that statement, he pointed to the individual. Officer Bruno and his partner approached the man who was pointed out to them and as they reached within 50 to 75 feet of him, he ran between two houses, at which time they lost sight of him. At that time it was dark but the street lights were on and Officer Bruno observed what he was wearing, his height, build and weight and that he was a black man. However, he did not observe his facial features. Both policemen went down the alley where the subject ran and inquired about the subject at a doorway to an apartment. The complainant who followed the police to the area told them that one of the women in the doorway was the subject’s girlfriend and then indicated that the subject was in the back yard. Both police officers ran toward the subject, but he jumped over a fence and disappeared into the darkness.
Police Officer Bruno then sent a message over his radio to other police in the area, describing the perpetrator from his own observations. Shortly thereafter he received a message that another police officer had a person fitting the description on 54th and Church Streets which is located approximately two blocks from 377 East 52nd Street. He drove to that location and upon viewing the subject, placed him in his patrol car, iri handcuffs, and drove him back to where the complainant was standing some two blocks away. Later, a gun was found in a hat in the yard adjoining the one in which the perpetrator was observed.
When the officer approached Jimmy St. Die, he asked, "Is this the subject that committed the robbery?” The complainant, viewing the subject who was seated in the patrol car, answered, "Yes.” The entire incident took about 10 minutes from the time Officer Bruno first saw the complainants until the identification of defendant as he was seated in the police vehicle.
*142 Generally, showups are frowned upon (Stovell v Denno, 388 US 293, 302; People v Ballott, 20 NY2d 600, 606) unless there are exigent circumstances (see, People v Brnja, 70 AD2d 17, 23, affd 50 NY2d 366; People v Adams, 53 NY2d 241). Normally, a complainant will give a description of the perpetrator and the police, upon observing a suspect who fits the description, will make that person available for viewing by the complainant to obtain quick verification of the identification of the suspect (People v Love, 57 NY2d 1023; People v Logan, 25 NY2d 184, 195). Procedures utilized by the police that are less than ideal may, as People v Adams (53 NY2d 241, supra) held, be tolerable where it is done immediately after the incident in the interest of prompt identification (People v Love, supra, at 1024).
In this case, however, Officer Bruno didn’t send a message with a potential suspect’s description from what was told to him by the complainant. Rather, he submitted his own description, after viewing a person pointed out to him by the complainant. When he saw the individual who was stopped by another officer two blocks from the occurrence, he was then able, from his own observation, to determine that the person stopped was the same person pointed out to him approximately 10 minutes earlier by Jimmy St. Die. This court finds that, at that time, there was reasonable cause for Officer Bruno to arrest, based upon the accusation of the complainant as he pointed out the perpetrator to Officer Bruno and Officer Bruno’s own observations of the perpetrator.
At that point, the defendant was under arrest, and there were no further exigent circumstances to warrant an immediate verification of the identity of the defendant and a lineup could have been conducted (People v Brown, 121 AD2d 733; People v Mercado, 63 AD2d 720; People v Rogers, 81 AD2d 980). In the absence of exigent circumstances, the police procedure of exhibiting defendant while handcuffed and seated alone in a police vehicle would not encourage reliable or trustworthy identification (People v Ford, 100 AD2d 941). Had the officers stopped the wrong man, that is, not the same person pointed out by the complainant shortly before, the manner in which he was viewed could be damaging to the defendant. Accordingly, the out-of-court in-street identification is suppressed.
The People now ask for an opportunity, after resting on this portion of the hearing, to conduct what they term to be a bifurcated hearing. They now wish to present additional evi *143 dence to show that there was a sufficient, independent source from which the complainant may make an in-court identification of the defendant.
The defendant objects on the grounds that, once having rested, the plaintiff is precluded from reopening the hearing for any purpose. He cites People v Robinson (100 AD2d 945) which is distinguishable on the facts.
The appellate case law concerning identification issues holds quite to the contrary. As the United States Supreme Court has held, once the pretrial identification procedure is shown to be impermissible and improper, any in-court identifications, though not, per se, excludable, are not to be received in evidence "without first determining that they were not tainted by the illegal lineup but were of independent origin” (Gilbert v California, 388 US 263, 272). The New York State Court of Appeals follows the directive set forth by the United States Supreme Court. In cases where a suggestive identification procedure was employed and the out-of-court identification had not been suppressed, but should have been, upon a new trial the trial court is directed to conduct a hearing in the first instance to give the People an opportunity to prove by " 'clear and convincing evidence’ ” that the in-court identification has not been tainted and was based upon observations of the suspect other than the improper suggestive out-of-court identification procedure (People v Ballott, 20 NY2d 600, 606, supra; People v Rahming, 26 NY2d 411, 417).
The People are not required to produce the eyewitnesses at pretrial identification hearings. On the motion to suppress, the burden of proof is on the moving party, i.e., the defense, to show that the pretrial identification was unconstitutional. The defendant must show that the totality of the circumstances surrounding the pretrial identification proceeding resulted in a suggestive atmosphere (see, People v Sutton, 47 AD2d 455, 459). The People have a simultaneous initial burden of going forward with evidence by showing the reasonableness of the police conduct in the first instance (see,. People v Berrios, 28 NY2d 361, 367). It is only when the defense has met its burden, after the People have met their initial burden of going forward to try to establish the reasonableness and lack of suggestiveness of the pretrial identification procedures, that the People must show, through the eyewitness, that an in-court identification has a source independent of the tainted procedure (People v Jones, 112 AD2d 952, 953).
*144 The Appellate Division, Second Department, has held that when a complainant did not testify at the suppression hearing, the trial court was unable to make a finding as to whether an independent basis existed for the complainant’s in-court identification (People v James, 111 AD2d 254, 255). Thus, in such cases it has been necessary to examine these witnesses as to their independent bases for in-court identifications at a new Wade hearing (People v Bradley, 117 AD2d 675). This procedural determination follows that set forth by the Court of Appeals in People v Dodt (61 NY2d 408, 417-418) and subsequently supported by said court in People v James (67 NY2d 662) in affirming the Appellate Division, Second Department, conclusion in People v James (111 AD2d 254, supra).
Research of the case law concerning identification testimony at trial based upon an out-of-court identification reveals that the appellate courts, finding an out-of-court identification suppressible, give the People, upon a new trial, a "second bite at the apple” to establish by clear and convincing evidence that an independent source existed sufficient to sustain an in-court identification not tainted by the improper out-of-court identification (People v Riley, 70NY2d 523; People v Clay, 132 AD2d 561). The reasoning for sending the issue of an independent basis for an in-court identification back to the trial court is to assure that the People do not rely upon the trial record for appellate courts to correct omissions or fill gaps in pretrial prerequisites (People v Riley, supra, at 532; People v Dodt, 61 NY2d 408, supra).
Although the appellate courts do not encourage the reopening of a hearing (People v Robinson, supra, at 947), judicial economy and procedural precedent apparently dictate this court to now permit the People to establish by clear and convincing evidence an independent source for an in-court identification by the complainant. Accordingly, the People are granted their request to present evidence of an independent source at a new Wade hearing (People v Riley, supra, at 532; People v Clay, supra).
Where an appellate court, after suppressing an out-of-court identification, directs a new Wade hearing to determine an "independent source” for an in-court identification, it would be unreasonable for a trial court making a similar determination not to direct a new Wade hearing.