■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MOSES REYES, Also Known as MOISES REYES, Appellant.—Judgment, Supreme Court, Bronx County (Maurice Grey, J.), rendered July 2, 1982, convicting appellant, after a jury trial, of robbery in the first degree (Penal Law § 160.15 [3]), and

sentencing him to an indeterminate term of 3⅓ to 10 years' imprisonment, unanimously reversed, on the law, the facts, and as a matter of discretion in the interest of justice, the motion to suppress the in-court identification granted, and the matter remanded for a new trial.

At high noon on October 16, 1981, Andrew De Stephano was waiting on line at Yankee Stadium to purchase tickets to the World Series when two Hispanic men approached him and offered to sell him box seats. De Stephano left the line and walked away from the stadium with the men, who claimed they did not want to conduct the transaction there because "a lot of people were getting busted for scalping." Along the way, one of the men went into a store to buy beer, while the other, later identified as Miguel Santiago, waited outside with De Stephano. The three then continued walking.

After walking another half block, Santiago produced a knife and held it to De Stephano's throat. De Stephano was then walked at knifepoint until he was forced into the well-lit lobby of an apartment building, where he was robbed of $65 and released. De Stephano claimed he was in the presence of the robbers for 15 to 20 minutes and had a sufficient opportunity to see the faces of both men.

Following the robbery, De Stephano returned to Yankee Stadium and reported the crime to the police. Less than four hours later, another individual complained of scalpers to the police at Yankee Stadium; this person pointed out Santiago and appellant Moises Reyes. The two men were arrested by the officer, who believed the pair fit De Stephano's description; a knife matching the description supplied by De Stephano was recovered from Santiago.

At 7:30 P.M., less than eight hours after the robbery, De Stephano viewed separate lineups for each defendant at the 48th Precinct. De Stephano made a positive identification of Santiago as the knife-wielding robber. However, De Stephano was unable to positively identify appellant, even after a five-minute viewing.

The next day, Sergeant William Crawley drove De Stephano to Criminal Court to sign a corroborating affidavit in support of the felony complaint. Crawley told De Stephano that he had made a positive identification of Santiago and "don't worry about" failing to identify the other robber. Then, rather than bring De Stephano directly home after the affidavit was signed, Crawley drove him to the 42nd Precinct, where the other suspect, appellant, was about to be released. Crawley

left De Stephano in the car, went into the station, and escorted appellant out a few minutes later. Suddenly, De Stephano was "two hundred percent sure" that appellant was the second robber.

The hearing court correctly determined that the showup conducted as appellant was released from the precinct was unduly suggestive. However, it went on to find that De Stephano's in-court identification of appellant was based on his memory of the crime, and therefore had a source independent of the tainted pretrial confrontation. We disagree with this conclusion, which has no basis in fact.

It has long been the rule that a witness may make an in-court identification, despite the occurrence of an improper showup, if the People prove by clear and convincing evidence that the in-court identification is based upon an " 'independent source' ". (*People v Ballott*, 20 NY2d 600, 606; *People v Adams*, 53 NY2d 241, 251.) While De Stephano had ample opportunity to observe both robbers during the 15-to-20-minute daytime robbery, he was unable to identify appellant less than eight hours later, whereas he promptly and correctly identified Santiago.

The record clearly establishes that De Stephano's identification of appellant was directly induced by the unlawful, suggestive showup conducted the day *after* De Stephano viewed the two lineups and proved himself unable to identify appellant. (*People v Moore*, 96 AD2d 1044, 1045; *see also, People v Boyce*, 89 AD2d 623, 624-625.) We can only conclude that Crawley brought De Stephano to the precinct, rather than driving him home after he signed the affidavit in Criminal Court, in order to procure the identification which De Stephano was unable to make at the constitutionally sound lineup the night before. Aside from the cue given by Crawley, who paraded appellant for De Stephano's benefit, in a calculated manner designed solely to obtain a positive identification, appellant was the only suspect leaving the precinct who had been in the lineup the previous evening.

Thus, it is obvious that the patently suggestive showup was the source of the first and all subsequent identifications made by De Stephano. We therefore conclude that the People failed to prove by clear and convincing evidence that De Stephano could make an in-court identification untainted by the suggestive showup, and that De Stephano should not have been permitted to identify appellant in court, or to testify as to any matters regarding the identification. (*People v Ballott, supra; People v Moore, supra; People v Jackson*, 118 AD2d 655.)

Appellant also contends that the court committed error by instructing the jury that "it is possible to demand proof to a reasonable certainty and to that degree of proof the People must be held." We have repeatedly held, and now reaffirm, that the use of the phrase "reasonable certainty" constitutes error because it subverts the standard of proof of guilt beyond a reasonable doubt. *(People v Lanni,* 73 AD2d 538; *People v Cavallerio,* 71 AD2d 338, 345; *People v Forest,* 50 AD2d 260, 262; *People v Cotto,* 28 AD2d 1116, 1117; *see also, People v La Rosa,* 112 AD2d 954.) Although this error has not been preserved for appellate review, upon retrial, the jury should not be charged with this improper language. *(People v Morris,* 100 AD2d 600, 601; *People v Lanni, supra; People v Tyler,* 54 AD2d 723.) Concur—Kupferman, J. P., Ross, Carro, Ellerin and Rubin, JJ.