OPINION OF THE COURT
Edward M. Davidowitz, J.
Defendants are charged with robbery in the first and second degrees and related crimes. The indictment alleges that they, *861 and three other young men, while armed with a handgun, assaulted and robbed Vincent Pinto on December 28, 1989.*
The record discloses that defendants approached Mr. Pinto about 9:15 p.m. while he was traveling on a subway. Durham pointed a gun at him, and the others held him, rifled his pockets, and took his money and jacket. Little then punched Mr. Pinto in the face and threw him from the train at the Zarega Avenue station.
The complainant reported the crime to Transit Authority police officers who happened to be in the station. They drove in a police car to the next stop, where Mr. Pinto identified defendants as they left the station near the corner of Tremont and Westchester Avenues. Loaded handguns were taken from two of them.
Everyone then went to a Transit Authority precinct where the arrests were processed. During the course of an interview, the police asked Mr. Pinto to identify each defendant and describe his role in the robbery, which he did.
The People notified defendants, pursuant to CPL 710.30, that they intended to offer evidence of the identification that Mr. Pinto made when defendants left the train station. Defendants alleged that this procedure was unduly suggestive, and moved to suppress it or, in the alternative, for a Wade hearing. Since Mr. Pinto initiated the confrontation, and not the police, the motion was denied (People v Gissendanner, 48 NY2d 543).
The police, did not, until the case was being prepared for trial almost 10 months after defendants’ arrest, tell the District Attorney’s office that they asked Mr. Pinto in the precinct to point to each defendant and describe his involvement in the robbery. The Assistant District Attorney who was going to prosecute this matter notified defense counsel during a court proceeding in October 1990 and an affidavit, which basically sets forth the facts described above, was filed with the court. Defendants then moved to preclude the People from introducing any identification testimony or evidence at trial (People v McMullin, 70 NY2d 855).
CPL 710.30 provides that the People, within 15 days of arraignment, must serve upon a defendant a notice of their intention to offer at trial his statement to a "public servant”, *862 or testimony of his identification by a witness. Generally, testimony regarding those observations, and statements is inadmissible — and, in the case of identification evidence, precluded altogether — if notice is arguably required, and not given, or delayed, unless good cause is shown (CPL 710.30 [2]; People v O’Doherty, 70 NY2d 479; People v Bernier, 141 AD2d 750, affd 73 NY2d 1006; People v Brown, 140 AD2d 266; People v McMullin, supra).
The purpose of section 710.30 is to allow defendants to test the admissibility of evidence at pretrial suppression hearings. Certain traditional kinds of statements, and procedures, nevertheless, do not ordinarily require a hearing (People v Newball, 76 NY2d 587). They include statements by a defendant which are clearly spontaneous (People v Pulido, 138 AD2d 641), or are in response to a request for "pedigree” information (People v Hester, 161 AD2d 665); identification procedures employed by the police in cases where the parties knew each other before the incident (People v Gissendanner, supra), or which are essentially confirmatory in nature (People v Morales, 37 NY2d 262); or an identification by a witness that was initiated by him and not the police (People v Brown, 124 AD2d 812). Application of these principles and rules to this case demonstrates that a Wade hearing was not called for.
The first identification of defendants was initiated by Mr. Pinto and not the police, who simply responded to his accusations. The investigation conducted in the precinct after defendants’ arrest was intended simply to clarify the role played by each person. It was not an identification procedure and there was no risk that Mr. Pinto’s in-court identification of defendants would be the product of that showup rather than his observations during the crime and afterwards on the street. A number of Appellate Division decisions bear instructive parallel to this case and support that conclusion.
For example, in People v Knight (156 AD2d 588), the complainant identified defendant, who robbed him in an elevator, to the police three days after the robbery as he was walking on the street. "At that point”, the court said, "the identification process was complete” and a showup in the precinct after the arrest was simply "to ensure that the proper person was arrested” (supra, at 589).
In People v Cox (164 AD2d 779), a precinct showup was held to be "an acceptable confirmation of an earlier identification by the complaining witness” — in large part because the *863 showup occurred shortly after the incident. The complaining witness, who had been robbed by the defendant and four others, reported the crime almost immediately to the police who arrested them on the street. He identified the defendants in the precinct as they walked past him; however, the danger of misidentification did not exist since there was not a "significant break between the incident and the two identification procedures” (supra, at 780).
And in People v Nixon (162 AD2d 225), the complainant identified five robbery suspects to a police officer as they walked away from him and then again in separate showups 10 minutes later in the precinct. That procedure, the court said, was confirmatory and not improper, largely because it was not the initial identification.
These rules were also followed in People v Kelley (144 AD2d 386), People v Banks (143 AD2d 677), People v James (138 AD2d 744), People v Higgs (111 AD2d 410), and People v Sweeper (165 AD2d 691), all of which considered facts, and circumstances very much like the foregoing cases and substantially similar to this matter.
Once Mr. Pinto identified defendants to the police on the street, the identification process was complete and there was no risk that the precinct showups would result in a misidentification — the danger to be avoided in this kind of procedure. Moreover, the viewing arranged by the police was not an identification procedure in the traditional sense, but an appropriate effort to clarify the part played by each defendant in the robbery. Accordingly, a Wade hearing was not required (People v Vaughn, 169 AD2d 670).
Although notice pursuant to CPL 710.30 is clearly the wisest course (People v Rubio, 118 AD2d 879; People v Naranjo, 140 Misc 2d 43), failure to serve it does not under the special circumstances of this case support defendants’ motion to preclude all identification evidence and it is denied.

 The cases against the codefendants were resolved by guilty pleas at different stages of the proceedings.