OPINION OF THE COURT
Richard Lee Price, J.
Defendant has been indicted for robbery in the second degree and defense has moved to suppress identification testimony. This court held a Wade hearing on March 23, 1994 and April 19, 1994. A decision was rendered on the record in open court at the conclusion of the hearing, and this written decision expands thereon.
Detective Dennis Laverty of the Transit Police Internal Affairs Unit, and Detective Thomas Flanagan of the New York City Transit Police Central Robbery Division testified for the People. I find their testimony to be credible in all respects.
FINDINGS OF FACT
Detective Laverty was assigned to investigate a robbery which took place on September 12, 1992 at 149th Street on the northbound number four train platform.
On September 14, 1994 at the detective’s office in District Eleven, the complaining witness, Mr. Greig LaBoy, used a photo imaging computer to identify the perpetrator of the robbery. The computer, which is referred to by the police as the PINS, creates a composite of photos based upon the description given by a witness. The computer then places six photographs at a time on the screen and if the witness positively identifies a photograph then that picture can be enlarged on the screen for him/her to get a better look.
On that day, Detective Flanagan took the description given by Mr. LaBoy from the TP-67 complaint form and entered it into the PINS computer. The PINS computer then brought up a composite of approximately 300 photos matching that description. After viewing the 300 or so photographs brought up by the PINS computer, Mr. LaBoy selected the defendant’s photo as the individual who committed the crime. Detective Flanagan then made out a photo ID form, had the complainant sign it, and turned the form over to Detective Laverty.
Detective Flanagan did not indicate to Mr. LaBoy who he should select, and Detective Laverty was not present at the District Eleven detective’s office during this procedure. The People did not produce the array of 300 photographs at the Wade hearing.
*47 Detective Laverty conducted a lineup at the 48th Precinct on September 21, 1992, which Mr. LaBoy viewed. First, Detective Laverty contacted Mr. LaBoy by phone on that day indicating that he wanted him to view a lineup. Then, Detective Laverty went to the defendant’s home at about 5:00 p.m. and told the defendant that he was a suspect in a robbery that occurred on September 12, 1992. The detective then asked the defendant to accompany him to the police station and to be viewed in a lineup.
Once at the 48th Precinct, the defendant was kept in the Bronx detective’s office. Mr. LaBoy arrived at the 48th Precinct at about 6:30 p.m. and was kept in a room across the hall called the "catch unit” for approximately 15 minutes before the lineup was conducted. These two areas are not visible to one another. The lineup fillers were kept in the lineup room for the entire period that Mr. LaBoy was at the Precinct.
Detective Laverty told Mr. LaBoy that he was going to view a lineup and that if he recognized anybody to indicate that person to him. Before the lineup, the defendant chose to sit in seat number three, and Mr. LaBoy selected the person in seat number three as the person who committed the robbery. At no time was Mr. LaBoy told who to select, nor was he directed to any individual in particular. Detective Laverty took a picture of the lineup which was admitted into evidence at the hearing.
CONCLUSIONS OF LAW
The People have the burden of going forward at the hearing to show the legality of the police conduct (People v Berrios, 28 NY2d 361 [1971]; People v Borges, 37 AD2d 581 [2d Dept 1971]). The People have satisfied this burden by detailing the circumstances surrounding the identification procedure (People v Borges, supra; People v James, 111 AD2d 254 [2d Dept 1985]).
The burden then shifts to the defendant to prove a violation of due process by a preponderance of the evidence (People v Ballott, 20 NY2d 600 [1967]). The defendant has failed to prove that a due process violation has occurred. Accordingly, suppression of the identification procedures is denied.

A. Photo Imaging Computer

Ordinarily, the People must preserve a photo array so that a court may determine whether the process employed *48 was unduly suggestive (People v Jerome, 111 AD2d 874 [2d Dept 1985], lv denied 66 NY2d 764; People v Barber, 96 AD2d 1112 [3d Dept 1983]; People v Foti, 83 AD2d 641 [2d Dept 1984]). However, here the complaining witness came to the detective’s office in District Eleven just two days after the crime and was shown an array of approximately 300 photographs which were selected by the computer for having matched his description of the perpetrator. From these 300 photographs, Mr. LaBoy made an identification. The large volume of photographs in the procedure militates against the presence of suggestiveness (People v Mason, 138 AD2d 411 [2d Dept 1988]), and the undue burden of preserving an array of this size justified the People’s failure to produce it at this Wade hearing (see, People v Jerome, supra). Furthermore, Detective Flanagan, who showed the photographs to the complaining witness, was subjected to cross-examination and there was no indication that the photographs were suggestive in any way. Finally, the photographs were shown to the witness during a time in the investigation when the police did not yet have a suspect, further mitigating the likelihood of suggestiveness (People v Ludwigsen, 128 AD2d 810 [2d Dept 1987], lv denied 69 NY2d 1006).

B. Lineups

Careful examination of the photograph taken of the lineup reveals that the fillers appear to be approximately the same age, height, weight, and build and have similar skin tone as the defendant (see, People v Ruiz, 162 AD2d 637; People v Phillips, 145 AD2d 656). There is no requirement that all the participants in the lineup have virtually identical appearances (People v Duke, 181 AD2d 442 [1st Dept 1992]; People v Rudolph, 161 AD2d 115 [1st Dept 1990]; People v Gallant, 150 AD2d 602 [2d Dept 1989]).
Considering the totality of the circumstances surrounding the lineup procedure, I find that the lineup was not impermissibly suggestive (see, People v Rodriguez, 124 AD2d 611; People v Lundquist, 151 AD2d 505). While there are, of course, physical differences between the defendant and each of the fillers, they are sufficiently similar in appearance that no one stood out as the man the police wanted to identify. Thus, the lineup was not "so unnecessarily suggestive and conducive *49 to irreparable mistaken identification” as to deny the defendant due process (Stovall v Denno, 388 US 293, 302).
Accordingly, defendant’s motion to suppress the lineups, and the in-court identifications as the result of suggestive police conduct are denied.