**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAVID M. ZENT**
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jun 07 2013, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES D. BROOKS,                                )
                                                )
    Appellant-Defendant,                        )
                                                )
        vs.                                  )     No. 02A03-1210-CR-454
                                                )
STATE OF INDIANA,                               )
                                                )
    Appellee-Plaintiff.                         )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1109-FD-1262

**June 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A Dollar General employee called 911 and reported that a man had taken a bag of merchandise from the store without paying and left on a bicycle. Within a few minutes, a police officer saw James D. Brooks, who fit the description provided in the 911 call, riding a bicycle and carrying a plastic bag not far from the store. Brooks was taken to the store, where the employee identified Brooks as the thief. Brooks's bag contained Dollar General merchandise. Brooks was charged with and convicted of class D felony theft.

On appeal, Brooks argues that the identification procedure was unduly suggestive and that the employee's identification therefore should not have been admitted into evidence. We agree that the procedure used by the police, coupled with statements that the police made to the witness, was unduly suggestive. However, even when an unduly suggestive procedure is used, the identification is still admissible if, under the totality of the circumstances, the identification was reliable. Given the fact that Brooks fit the 911 caller's description, that police did not see anyone else fitting the description, and that Brooks was found in possession of the stolen merchandise very soon after the theft in the vicinity of the store, we conclude that the identification was reliable and therefore admissible despite the suggestive procedure.

Brooks also argues that his three-year sentence, the maximum for a class D felony,[1] was inappropriate in light of his character and the nature of his offense. Considering

---

[1] *See* Ind. Code § 35-50-2-7(a) (sentence for class D felony ranges from six months to three years).

Brooks's lengthy criminal record, we conclude that Brooks's sentence is not inappropriate. Therefore, we affirm his conviction and sentence.

**Facts and Procedural History**

On September 14, 2011, Marilyn Contreras was working at a Dollar General store in Fort Wayne. Contreras's responsibilities include greeting customers when they enter the store. Shortly before 11:00 a.m., a man entered the store and quickly walked to a certain area of the store. Contreras did not have the opportunity to greet him, so she started going around the store checking up on the customers. When she found him, he was walking quickly toward the door with a clear plastic bag containing merchandise from the store. He hurried out of the store and took off on a bicycle. Contreras followed him out of the store and saw him ride behind an Aldi store. Contreras called 911 to report the theft. A recording of the call reflects that she described the suspect as a black male in his thirties wearing a black shirt and jeans, riding a bicycle, and carrying a clear plastic bag.

Shortly after the description was broadcast, Officer Thomas Hough of the Allen County Police Department saw Brooks riding a bicycle and carrying a clear plastic bag. Officer Hough thought that Brooks fit the description of the suspect and detained him. Officer Hough handed Brooks over to Officer Daniel Amos of the Fort Wayne Police Department. Officer Amos took Brooks to the Dollar General store, where Contreras identified him as the thief.

The police brought the bag of stolen items back to the store and had Contreras ring them up. Contreras was able to scan all of the items, which she would not have been able to

do if they had not come from Dollar General. The total value of the stolen items was approximately $118. From the time that Contreras placed the 911 call to the time that she printed out the receipt, sixteen minutes elapsed.

On September 20, 2011, Brooks was charged with class D felony theft. On September 26 and 27, 2011, the case was tried to a jury. A key issue at trial was Contreras's identification of Brooks. Contreras acknowledged that she "never got very close to him in the store" and that her view was mostly from behind as she was following him out of the store. Tr. at 95. However, she also testified that she got close enough to tell that he was an African-American male, to determine his approximate height and age, and to see his hairstyle and clothing. She testified that when the police brought Brooks to the store for identification, they told her that "he was the only man they [had] seen on a bike with a bag down the street where I had pointed direction to." *Id.* at 90. She also testified that the police told her that Brooks fit the description that she had given. Contreras testified that Brooks was handcuffed and in a police car, but the police had him step out of the car so that she could see him. Officer Amos, on the other hand, testified that Brooks remained in the car. Contreras was standing ten to fifteen feet away when she identified him. Contreras also identified Brooks in court.

The jury found Brooks guilty as charged, and a sentencing hearing was held on October 22, 2012. No evidence was presented, and the parties and the trial court primarily relied on the presentence investigation report ("PSI"). The court noted that Brooks had one minor child, who was seventeen at the time, but did not attach mitigating weight to that

4

factor.  The court found Brooks' lengthy criminal history, which includes thirty-one prior convictions, to be an aggravating factor and sentenced Brooks to three years in the Department of Correction, to be served on work release.  Brooks now appeals.

**Discussion and Decision**

Brooks argues that:  (1) Contreras's identification was a product of an unduly suggestive procedure and should have been excluded from evidence; and (2) his sentence is inappropriate in light of his character and the nature of the offense.

*I.  Identification*

The procedure used by the police in this case is commonly referred to as a "show-up."

> In *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), the United States Supreme Court noted that a show-up procedure may be so unnecessarily suggestive and so conducive to irreparable mistake as to constitute a violation of due process. Such a claimed violation is to be examined in light of the totality of the circumstances surrounding it.  *Id*.  A per se rule of exclusion of pre-trial identification evidence involving suggestive or unnecessary procedures was rejected in *Manson v. Brathwaite*, 432 U.S. 98, 109-14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).  Instead, due process permits the admission of such evidence if, under the totality of circumstances, the identification is reliable. *Accord Neil v. Biggers*, 409 U.S. 188, 196-201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).  [We therefore employ] a two-step analysis.  *Slaton v. State*, 510 N.E.2d 1343, 1348 (Ind. 1987).  The first question is whether the initial identification procedure was unnecessarily or impermissibly suggestive.  *Id*. As noted in *Stovall*, "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. at 302, 87 S. Ct. 1967.  This Court has also recognized the inherent suggestiveness of such one-on-one confrontations. *Head v. State*, 443 N.E.2d 44, 55 (Ind. 1982); *Poindexter v. State*, 268 Ind. 167, 173, 374 N.E.2d 509, 512 (1978).  The second inquiry is whether, under the totality of the circumstances, the identification was reliable even though the procedure was suggestive.  *Slaton*, 510 N.E.2d at 1349.  We have permitted such procedures when they occur shortly after the commission of the crime

"because of the value of permitting a witness to view a suspect while the image of the perpetrator is fresh in the witness's mind." *Head*, 443 N.E.2d at 55.

*Hubbell v. State*, 754 N.E.2d 884, 892 (Ind. 2001).

In Brooks's case, the police not only used the oft-criticized show-up procedure, but also told Contreras that they felt that Brooks matched the description that she gave and that no one else matching that description had been seen in the area. This information strongly suggested to the witness that the police had found the right person and was a wholly unnecessary part of the procedure. We must agree with Brooks that the identification procedure was unduly suggestive.

We turn then to the issue of whether the identification was reliable despite the suggestive procedure. "A conviction will not be reversed if the State can show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Factors to be considered in evaluating the likelihood of a misidentification include: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; and (4) the level of certainty demonstrated by the witness." *Williams v. State*, 774 N.E.2d 889, 890 (Ind. 2002).

In her 911 call, Contreras described the suspect as a black male in his thirties wearing a black shirt and jeans, riding a bicycle, and carrying a clear plastic bag. Evidence concerning Brooks's age was not elicited during trial, although we note that the PSI shows that Brooks was forty-seven at the time of the offense. The evidence elicited at trial reflects

6

that the description that Contreras provided was otherwise correct. Brooks questions the quality of her opportunity to observe the thief at the time of the crime, noting that she did not get very close and viewed him from behind. However, she testified that she did see part of his face, and the descriptors that she provided in the 911 call were primarily things that could be observed from behind. Brooks also suggests that she was distracted by her work duties; however, her testimony reflects that she was focused on the thief once she located him in the store. Contreras did not explicitly testify as to her level of certainty, but she also did not express any doubts about the identification. Officer Hugh spotted Brooks within a few minutes of the theft in the general vicinity of the store. Brooks was riding a bicycle and had a clear plastic bag containing merchandise that was shown to belong to Dollar General. Officer Hugh testified that there "was nobody else on the street but [Brooks]." Tr. at 116. Under the totality of the circumstances, we conclude that the identification was reliable and was therefore admissible despite the suggestive procedure. We affirm Brooks's conviction.

## II. *Appropriateness of Sentence*

Brooks argues that his sentence is inappropriate in light of the nature of his offense and his character. Article 7, Section 6 of the Indiana Constitution authorizes this Court to independently review and revise a sentence imposed by the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Indiana Appellate Rule 7(B) states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Although appellate review of

7

sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v. State*, 829 N.E.2d 572, 587 (Ind. Ct. App. 2005) (internal citations and quotations omitted), *trans. denied*, *cert. denied* (2006). The defendant bears the burden of persuading us that the sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

As to the nature of the offense, Brooks argues that his crime could have been charged as class A misdemeanor conversion rather than class D felony theft. The element that distinguishes these two offenses is intent to deprive the owner of any part of its value or use. *Compare* Ind. Code § 35-43-4-2(a) (theft) *with* Ind. Code § 35-43-4-3(a) (conversion). Brooks does not point to any evidence that would tend to suggest that he did not intend to deprive Dollar General of the value of the stolen items.

Brooks also argues that his sentence is unduly lengthy in relation to the value of the stolen items; however, we agree with the trial court that Brooks's very lengthy criminal record more than justifies the maximum sentence of three years. Between 1982 and 2012, Brooks was convicted of twenty-nine misdemeanors and two felonies. This includes a prior conviction for theft and three prior convictions for conversion. He has frequently received suspended sentences, and at least six of those sentences were fully or partially revoked. Brooks's long history of disdain for the law reflects poorly on his character, and he has not persuaded us that his sentence is inappropriate. Therefore, we affirm.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.